Points Decided.

(January 11, 1912.)

## CADDIE BATES, Appellant, v. THE CAPITAL STATE BANK et al., Respondents.

[121 Pac. 561.]

Replevin—Claim and Delivery—Possession of Property—Married Woman—Bonds—Deposited for Safekeeping—Pledge of Bonds—Collateral Security—Statutory Construction—Capacity to Contract—Consideration.

(Syllabus by the court.)

1.  Under the provisions of the state constitution, sec. 5, art. 1, and sec. 4220, Rev. Codes, there is but one form of civil action in this state for the enforcement or protection of private rights and the redress or prevention of private wrongs.

2.  Sec. 4168, Rev. Codes, provides what a complaint in an action must contain, and among other things, it must contain a statement of the facts constituting the cause of action, in ordinary and concise language.

3.  Under the provisions of the state constitution and the Code of Civil Procedure, the technicalities of the common law in regard to pleadings have been dispensed with, and the plaintiff need only state his cause in ordinary and concise language without regard to the ancient forms of pleadings; and where that is done, he can be sent out of court only when upon his alleged facts he is not entitled to any relief either at law or in equity.

4.  Under the provisions of sec. 4271, Rev. Codes, the plaintiff in an action to recover the possession of personal property may, at the time of issuing the summons or at any time before an answer is filed, claim the immediate delivery of such property to him as provided in the chapter concerning claim and delivery of personal property.

5.  The common-law action of replevin is not in force in this state, and the provisions of chap. 2, title 7, Rev. Codes, take its place.

6.  Under the common law, replevin would not lie against a defendant who had parted with the possession of the chattel prior to the commencement of the action.

7.  Under the provisions of said sec. 4271, it is left optional with the plaintiff whether he demand immediate possession of the personal property or not.

8. Under the provisions of sec. 4272, where immediate delivery of personal property is claimed, an affidavit must be filed by the plaintiff setting forth certain facts, and under the provisions of sec. 4273 he must also indorse on the affidavit written instructions to the sheriff and give a written undertaking as provided by sec. 4274.

9. The writ of replevin under the common law was a judicial writ and at first only issued by the king's chancellor. The action of replevin was begun by suing out the writ.

10. Under the provisions of sec. 4138, Rev. Codes, an action to recover the possession of personal property is commenced by filing a complaint, and the filing of the affidavit and undertaking in "claim and delivery" is not required in order to commence or maintain the action, and the substitute for the writ of replevin, under our statute, is the written direction of the plaintiff on the affidavit in attachment, and is not required in order to commence or maintain the action.

11. Under the provisions of sec. 4453, Rev. Codes, if the plaintiff is successful in his action, judgment must be for the possession of the property or the value thereof in case a delivery cannot be had.

12. Under the provisions of the "claim and delivery" statutes of this state, an action may be maintained against a person to recover the possession of personal property, although he has not the possession of it at the time of the commencement of the action.

13. *Held,* under the facts of this case that the plaintiff, a married woman, on the 23d day of August, 1901, deposited the mortgage bonds referred to in the complaint in the defendant bank for safe-keeping and not as collateral security for the payment of her husband's debts.

14. On the 15th of April, 1904, about two years after the death of her husband, plaintiff entered into a contract with said bank, whereby she agreed to turn said mortgage bonds over to the bank for the return to her of her deceased husband's promissory notes, amounting in all to about $17,000. The bank thereupon agreed to and did deliver to her said promissory notes with the understanding and agreement that the bank would proceed and sell said mortgage bonds for the best price obtainable, and if it received therefor more than sufficient to pay the indebtedness represented by said promissory notes, the surplus would be paid over to her. *Held,* that she had the authority and capacity to make said contract, and that she received a valuable consideration therefor.

15. *Held,* that the contract of April 15, 1904, was not based upon a void contract.

16.  Under the provisions of sec. 2498, Rev. Stats. of 1887, the husband had the management and control of the separate property of the wife during the continuance of the marriage, but no sale or other alienation of any part of such property could be made or any lien or encumbrance created thereon unless by an instrument in writing signed by the husband and wife and acknowledged by her on examination separate and apart from her husband, as upon a conveyance of real estate.

17.  Persons competent to contract may select as a consideration some right or forbearance which the law recognizes, and if they receive just what they bargain for, the law will not inquire into the wisdom of accepting such consideration or the profit or loss arising out of the transaction.

APPEAL from the District Court of the Third Judicial District for Ada County.   Hon. John F. MacLane, Judge.

Action to recover possession of certain mortgage bonds or their value.   Judgment for defendants.   *Affirmed.*

Jackson, Quarles & Taylor, for Appellant.

An attempt to ratify a void contract is itself void. (*Thompson v. Hudgins,* 116 Ala. 93, 22 So. 632; *Union Nat. Bank v. Hartwell,* 84 Ala. 379, 40 So. 156; Page on Contracts, sec. 275.)

The said agreement, Exhibit "C," was without consideration. It lacked mutuality.   (*Maher v. Martin,* 43 Ind. 314; *Musick v. Dodson,* 76 Mo. 624, 43 Am. Rep. 780; 1 Parsons on Contracts, 434; *Wilcox v. Arnold,* 116 N. C. 708, 21 S. E. 434; *Christian v. Niagara Ins. Co.,* 101 Ala. 634, 14 So. 374; *Doe v. Culverwheel,* 35 Cal. 291; *Vogel v. Pekoc,* 157 Ill. 339, 42 N. E. 386, 30 L. R. A. 491.)

There is no allegation in the pleadings, and no proof in the record, to show that the note signed by the appellant with her husband to the bank was for the benefit of her separate property, and the presumption is that it was her husband's debt. At any rate, she was not liable thereon, and it was, as against her, void.   (*Bank of Commerce v. Baldwin,* 12 Ida. 202, 85 Pac. 497; *Holt v. Gridley,* 7 Ida. 416, 63 Pac. 188; *Jaeckel v. Pease,* 6 Ida. 131, 53 Pac. 399; *Strode v. Miller,* 7 Ida. 16,

59 Pac. 893; *McDonald v. Rozen,* 8 Ida. 353, 69 Pac. 125; *Dernham v. Rowley,* 4 Ida. 753, 44 Pac. 643.)

Under our code, forms are of no importance, and have been abolished by our constitution. (Const., art. 5, sec. 1; *Rauh v. Oliver,* 10 Ida. 3, 77 Pac. 20; *Bates v. Bank,* 18 Ida. 429, 110 Pac. 277.)

It is not necessary that the defendant be in possession when demand is made or suit brought. (*Harkey v. Tillman,* 40 Ark. 551; *Caldwell v. Fenwick,* 2 Dana (Ky.), 333; *Sinnott v. Feiock,* 165 N. Y. 444, 80 Am. St. 736, 59 N. E. 265, 53 L. R. A. 565; *Tyler v. Young,* 46 Misc. Rep. 575, 92 N. Y. Supp. 818; *Jones v. Richards,* 50 Misc. Rep. 645, 98 N. Y. Supp. 698; *Newberry v. Gibson,* 125 Iowa, 575, 101 N. W. 428; *Murdoch v. Tuten,* 76 S. C. 502, 57 S. E. 547; *Segars v. Segars,* 82 S. C. 196, 63 S. E. 891; *Andrews v. Hoeslich,* 47 Wash. 220, 125 Am. St. 896, 14 Ann. Cas. 1118, 91 Pac. 772, 18 L. R. A., N. S., 1265; *Helman v. Withers,* 3 Ind. App. 532, 50 Am. St. 295, 30 N. E. 5; *Schmidt v. Bender,* 39 Kan. 437, 18 Pac. 491; *McBrian v. Morrison,* 55 Mich. 351, 21 N. W. 368; *Bates v. Bank,* 18 Ida. 429, 110 Pac. 277.)

Wyman & Wyman, for Respondent Meholin.

As to an executed contract, the matter of consideration is immaterial and will not be inquired into. (Page on Contracts, sec. 19; Bishop on Contracts, sec. 81.)

As to the contract of 1904, the surrender of these enforceable notes and the agreement to perform these services constituted a valuable consideration. (Page on Contracts, sec. 322.)

A subsequent promise, after acquiring capacity to contract, to perform a contract made before such capacity is acquired is enforceable if based upon a new consideration. (Page on Contracts, sec. 931.)

An action of replevin cannot be maintained against a defendant not shown to be in possession of the property sought to be replevied at the time of the commencement of the action,

unless it can be shown that he has disposed °of the property for the purpose of avoiding the writ. (Shinn on Replevin, sec. 164; *Robb v. Dobrinski,* 14 Okl. 563, 1 Ann. Cas. 981, 78 Pac. 101; *Depriest v. McKinstry,* 38 Neb. 194, 56 N. W. 806; *Sullivan v. Girson,* 39 Mont. 274, 102 Pac. 320; *Timp v. Dockham,* 32 Wis. 146.)

It lies only on behalf of one entitled to the possession as against one having at the time the suit is begun actual or constructive possession and control of the property. (24 Am. & Eng. Ency. of Law, pp. 495, 496; Cobbey on Replevin, secs. 61, 63; *Gildas v. Crosby,* 61 Mich. 413, 28 N. W. 153; *Myrick v. National C. R. Co.* (Miss.), 25 So. 155; *McCormick v. McCormick,* 40 Miss. 760; *Riciotto v. Clement,* 94 Cal. 105; *Ramsdell v. Buswell,* 54 Me. 546; *Standard Oil Co. v. Bretz,* 98 Ind. 231; *Hall v. White,* 106 Mass. 599; *Henderson v. Hart,* 122 Cal. 332, 54 Pac. 1110; *Hall v. Kalamazoo,* 131 Mich. 404, 91 N. W. 615; *Gallick v. Bordeaux,* 31 Mont. 328, 78 Pac. 583.)

Our statute was borrowed from California, and the rule in that state has always been in accord with the overwhelming weight of authority. (*Richards v. Morey,* 133 Cal. 437, 65 Pac. 886.)

Pence & Tennyson, for Respondent Capital State Bank.

Where anything is done that imports a new consideration, it binds the parties. (*Spitz v. Fourth Nat. Bank,* 8 Lea (Tenn.), 641.)

"A subsequent promise, after acquiring capacity to contract, to perform a contract made before the capacity is acquired is enforceable if based upon a new consideration." (2 Page on Contracts, sec. 931; *Lackey v. Boruff,* 152 Ind. 371, 53 N. E. 412.)

It was sufficient consideration upon which to base an agreement whether the plaintiff gained anything in the transfer or not. (*Cook v. Bradley,* 7 Conn. 57, 18 Am. Dec. 79; 1 Page on Contracts, sec. 274; *Visalia Gas etc. Co. v. Sims,* 104 Cal.

326, 43 Am. St. 105, 37 Pac. 1042; 9 Cyc. 312; Bishop on Contracts, sec. 61.)

No recovery can be had in an executed contract even by restoring the other party to his former position. But this case does not even have the equities surrounding it sufficient to do that, for at the time of demand the notes were outlawed. (Bishop on Contracts, 2d ed., secs. 509, 545, 627, 820; 1 Page on Contracts, sec. 281; *Hill v. Freeman,* 73 Ala. 200, 49 Am. Rep. 48; *Chapman v. Searle,* 3 Pick. (Mass.) 38, 44.)

Want of mutuality is no defense in the case of an executed contract. (9 Cyc. 333; *Varney v. Bradford,* 86 Me. 510, 30 Atl. 115; *Logging Co. v. Robson,* 69 Fed. 773, 16 C. C. A. 400; *Wheeler & Wilson Mfg. Co. v. Lion,* 71 Fed. 374.)

Performance by a married woman of her promise, void on account of coverture, constitutes a valuable consideration. (1 Page on Contracts, sec. 310; *Hoffman v. Colgan* (Ky.), 74 S. W. 724.)

SULLIVAN, J.—This action was commenced to recover the possession of twenty-one Pacific & Idaho Northern Railroad bonds of the face value of $1,000 each, or in case delivery could not be had, their real value, alleged to be $29,496.25, which bonds were alleged to have been deposited with the Capital State Bank of Idaho for safekeeping, which bank will hereafter be referred to as respondent bank. It is alleged that said bonds were so deposited on August 23, 1901. This case was before this court on a former appeal. (See 18 Ida. 429.) On that appeal this court held that there were but two questions involved, viz.: "Does the complaint state a cause of action?" and "Was the action barred by the statute of limitations?" The court on that appeal held that the complaint stated a cause of action and that said cause was not barred by the statute of limitations. A petition for rehearing was filed on that appeal, in which counsel urged upon the court the importance of deciding the question as to whether an action in replevin can be maintained against one not in possession of the property at the time of the commencement of the action. This court held that that question did not arise upon

the record as presented to the court on that appeal, and declined to decide that question.

Under that decision, the cause was remanded for further proceedings in the trial court. Thereupon the defendants filed separate answers and appellant moved to strike out of said answers certain matters, and at the same time filed demurrers to each of said answers. The demurrers were confessed by the respondents and leave given to file separate answers. Upon the filing of said answers appellant moved to strike out certain parts thereof, and also moved to strike out said answers, and filed demurrers to each of said answers, which motions and demurrers were overruled by the court.

It appears that appellant treated the said amended answers as containing cross-complaints and counterclaims and filed answers thereto, making certain specific denials and plead affirmative matter and the statute of limitations.

Upon the issues thus made the cause came on for trial before the court with a jury. Both parties introduced evidence and rested. The case was thereupon submitted to the jury upon the instructions given by the court and the jury returned a verdict in favor of the respondents and judgment was entered thereon. This appeal is from the judgment.

*In limine,* it is contended by counsel for respondents that this is an action in replevin, and cannot be maintained, for the reason that it appears from the evidence that the bonds in question were sold by the bank in 1906, and that from that time on neither of the defendants has at any time had possession, custody or control of any of them, and many authorities are cited on the proposition that an action in replevin will lie only against the party in possession of the property at the time the action was instituted. (Shinn on Replevin, sec. 164; *Robb v. Dobrinski,* 14 Okl. 563, 1 Ann. Cas. 981, 78 Pac. 101, and numerous other authorities.) Under the provisions of sec. 1, art. 5, of the constitution, the distinctions between actions at law and suits in equity and the forms of such suits and actions are prohibited, and it is there declared that there shall be in this state but one form of action for the enforcement or protection of rights or the redress of private wrongs.

(See, also, sec. 4020, Rev. Codes.)    Sec. 4168, Rev. Codes, provides that the complaint in all actions must contain, first, the title of the action, the name of the court and the county in which the action is brought and the names of the parties to the action; second, a statement of the facts constituting the cause of action in ordinary and concise language; third, a demand for relief, etc.    In an action where one is entitled to relief at law or relief in equity, his complaint must contain a statement of the facts constituting the cause of action in ordinary, concise language.    This court held in *Rauh v. Oliver*, 10 Ida. 3, 77 Pac. 20, that under the provisions of the Code of Civil Procedure the technicalities of pleadings under the common law have been dispensed with, and the plaintiff need only state his cause of action in ordinary and concise language, whether it be in *assumpsit*, trespass or ejectment, without regard to the ancient forms of pleadings, and that the plaintiff can be sent out of court only when upon his alleged facts he is not entitled to any relief either at law or in equity.

The plaintiff has alleged in her complaint that on or about August 23, 1901, she deposited with the defendant, the Capital State Bank, twenty-one first mortgage bonds, etc.; that said bonds were her sole and separate property; that she has demanded the same of the defendant, the Capital State Bank, and of its receiver, Meholin, and that they refuse to return them to her, and she prays for a return of said bonds or their value.    There is contained in said complaint a statement of the facts constituting the alleged cause of action in ordinary and concise language.    But it is contended that since the evidence shows the bank disposed of said bonds in 1906, this action cannot be maintained; in other words, the action of replevin will only lie against the party in possession of the property at the time the action is instituted.    Sec. 4271, Rev. Codes, which is found in chap. 2, title 7, under the title of "Claim and Delivery of Personal Property," is as follows:

"The plaintiff in an action to recover the possession of personal property may, at the time of issuing the summons, or at any time before answer, claim the delivery of such property to him as provided in this chapter."

It is not there provided that he cannot maintain his action unless he demands immediate possession of the personal property, but he may demand such possession at any time before answer is filed.

The common-law action of replevin is abolished in this state and the provisions of said chap. 2, title 7, Rev. Codes, are substituted therefor. Under the common law replevin would not lie against a defendant who had parted with the possession of the chattel prior to the commencement of the action. The reason for that rule, as we understand it, was that the action of replevin under the common law would not lie without the issuance of the writ for immediate possession. Under our statute, however, the action will lie whether the plaintiff demands immediate possession or not. Said sec. 4271, above quoted, provides that the plaintiff may at the time of issuing the summons or at any time before answer claim the delivery of the property. Thus it is left at the option of the plaintiff whether he claim the immediate delivery of the property or not. And sec. 4272 provides where immediate delivery is claimed, an affidavit must be filed by the plaintiff setting forth certain facts, and he must also give a written undertaking as provided by sec. 4274. When that is done the plaintiff or his attorney (if plaintiff demands immediate possession) must indorse on said affidavit written direction to the sheriff to take such property from the defendant. (Sec. 4273, Rev. Codes.) Such written direction serves the purpose of the writ of replevin under the common law, which was a judicial writ and issued only by the king's chancellor. (Cobbey on Replevin, secs. 604, 607.) The action was begun by suing out the writ. (Shinn on Replevin, sec. 353.)

In the case at bar, the plaintiff filed no affidavit or undertaking and did not seek the immediate possession of said property. Under our statutes the action is begun by filing the complaint, and if on the trial plaintiff shows that he is entitled to the possession of the property, a judgment in the alternative must be entered for the possession of the property or the value thereof in case a delivery cannot be had, and for damages for the detention. (Sec. 4453, Rev. Codes.)

If the appellant had shown on the trial that she was the owner and entitled to the possession of said bonds, and that the bank had disposed of them in 1906, as the evidence shows it did, nevertheless she would have been entitled in this action to recover such a judgment as is prescribed by the provisions of said sec. 4453; and if the respondent bank or its receiver could have repurchased the bonds and returned them to her, they might have done so; or in case they could not or did not care to return them, they could have satisfied the judgment by paying the amount of the judgment. Under our claim and delivery law, such an action as the one at bar may be maintained against a person who first wrongfully converted such property, although he may not have the possession thereof at the time the action is commenced. In other words, the defendant does not necessarily have to be in the possession of the chattels when the action is commenced for their recovery in order for the plaintiff to maintain his action.

One of the purposes of our practice act was to do away with a multiplicity of suits, and it contemplates that all matters between the parties shall be determined in one action where they grow out of the same transaction, and our statutes in regard to the claim and delivery of personal property were designed to meet all of the exigencies which the old act of replevin and others did; and in case of a person having had possession of personal property and having disposed of the same, to the possession of which the plaintiff claims he is entitled, the provisions of our claim and delivery law are sufficiently broad to authorize the determination of the rights of the parties in regard to the possession of such property, and if it be determined that the plaintiff is entitled to the possession thereof, judgment may be entered for the return of the property, or in case a return cannot be had, for its value and whatever damages may be established on the trial for its detention. If the plaintiff states a cause of action in his complaint and it appears that before the commencement of the action the defendant disposed of the property without right or authority, the plaintiff would have the right to recover the value of the same, and his right of action would not depend

upon the possession of the property by the defendant at the date the action was commenced.

Ten errors are assigned, and for a clear understanding of the case, a statement of the facts out of which this case arose will first be made.

T. W. Bates, the husband of appellant, borrowed money of the Capital State Bank, one of the respondents, evidenced by certain promissory notes, to wit: One for $2,000 dated March 23d, 1900, executed by T. W. Bates and Caddie Bates, his wife, due on demand; one for $2,000, dated June 9, 1900, executed by T. W. Bates, due on demand; one for $3,500, dated May 25th, 1900, executed by T. W. Bates, due on demand; one for $1,000, dated Jan. 26th, 1901, executed by T. W. Bates, due on demand; one for $1000, dated July 28th, 1900, executed by T. W. Bates and L. G. Wilkerson, due on demand; one for $500, dated Feb. 5th, 1901, executed by T. W. Bates and W. D. Springer, due 90 days after date; one for $1,000, dated Feb. 15th, 1901, executed by T. W. Bates and L. G. Wilkerson, due 90 days after date; one for $2,250, dated Aug. 23d, 1901, executed by T. W. Bates, payable on demand.

On August 23, 1901, Mrs. Caddie Bates, the appellant, accompanied her husband to said bank in Boise City and took with her the twenty-one $1,000 first mortgage bonds of the Pacific & Idaho Northern Railway Company involved in this action, it is alleged, and deposited them there for safekeeping. She handed them to H. E. Neal, the cashier of said bank, and had no conversation with him about them, and took no receipt for them, and left the bank. It appears from the record that H. E. Neal, as cashier, executed a receipt in duplicate for said bonds, retained one himself and delivered the other to T. W. Bates, the husband. Said duplicate receipt bears date of August 23, 1901, was introduced on the trial and marked Exhibit "B," and will hereafter be referred to as Exhibit "B," and is in part as follows:

"THIS IS TO EVIDENCE:

"That the Capital State Bank of Idaho (Ltd.), by its cashier, H. E. Neal, has this day received from Caddie Bates twenty-one (21) First Mortgage Bonds of the Pacific and

Idaho Northern Railway Company, being for one thousand (1000) dollars each, par value, and numbered as follows, to wit: [Here follows the numbers of the bonds.]

"Also from T. W. Bates, Three Hundred and Five shares (305) of the Capital Stock of said corporation, represented by certificate numbered eleven (11) issued to, and in the name of T. W. Bates, all of said bonds and stock to be held by said bank as collateral, to secure the payment of the following mentioned and described promissory notes, to wit: [Here follows a description of the promissory notes above set forth.]

"Executed in duplicate.

"CAPITAL STATE BANK, LIMITED, BOISE CITY, IDAHO,

"By N. E. NEAL, Cashier."

It appears from the testimony of Mrs. Bates, the appellant, that she never had seen and knew nothing about said receipt.

Thereafter on the 5th day of September, 1902, the said T. W. Bates died. Thereafter the estate of said Bates was administered on by the appellant as executrix, under the last will and testament of said Bates, and an order was made by the probate court of Ada county for publication of notice to creditors, which notice was duly given, and it appears from the record that neither the said Capital State Bank nor any other person filed any claim against said estate on account of either or any of the aforementioned promissory notes, and said estate was closed and the executrix discharged on January 10, 1908. It appears that said promissory notes and said mortgage bonds remained in the possession of said bank up to the 15th day of April, 1904, about nineteen months after the death of said Bates, and on the last-named date an agreement was entered into between the said bank and the appellant, which was introduced in evidence on the trial and marked Exhibit "C," and will hereafter be referred to as Exhibit "C," and is in part as follows:

## "EXHIBIT 'C.'

"THIS AGREEMENT, Made and entered into on this 15th day of April, A. D., 1904, by and between the Capital State

Bank of Idaho, Limited, of Boise City, Idaho, by its Cashier, H. E. Neal, and Caddie Bates of Boise City, Idaho, a widow,

"WITNESSETH: That, whereas, the said Caddie Bates is the widow of T. W. Bates, deceased, and, whereas, the said T. W. Bates did during his life time become largely in debt to the said Capital State Bank of Idaho, Limited, and was in debt to the said bank at the time of his decease in the principal sum of Fourteen Thousand Sixty-five (14065) dollars, and which sum, together with interest, now amounts to Seventeen Thousand four hundred thirty-six dollars, thirty cents ($17436.30), said debt being on account of the following described promissory notes, to wit:"

(Here follows an enumeration of the promissory notes referred to, which enumeration contains all of the promissory notes above specified and the following notes not heretofore mentioned: One for $150, dated September 14, 1901, executed by T. W. Bates and R. M. Cobban, due 60 days after date; one for $510, dated October 18, 1901, executed by T. W. Bates and W. D. Springer, due 60 days from date; one for $30, executed by T. W. Bates, payable March 6, 1902; one for $125, dated June 14, 1902, executed by T. W. Bates and George S. Glover, due 60 days after date.)

The contract then continues as follows:

"And whereas, said T. W. Bates did prior to his decease turn over to said Bank for whatsoever sum might be received therefrom by said Bank, at the most suitable time to dispose of the same, and to be applied in payment on said obligations, three hundred and five shares of the capital stock of Pacific and Idaho Northern Railway Company, a corporation of the State of Idaho, and the said Caddie Bates did under date of August 23, 1901, turn over to the said Bank as collateral, to secure the payment to the said Bank of all of said obligations or promissory notes, together with interest accrued and accruing thereon, both as to said notes executed prior to the making of the deposit thereof, as also of those executed after the making of the said bond deposit, certain first mortgage bonds of said Pacific and Idaho Northern Railway Co., being twenty-one in all, and each being of a face value of one thousand

($1000) dollars, and numbered as follows, to wit: . . . . ''
[Then follows the numbers of the bonds.] .

''And, whereas, it is mutually desired by the said parties hereto, that the affairs of the deceased T. W. Bates, with the Capital State Bank of Idaho, Ltd., as secured by the bonds owned by the said Caddie Bates, be adjusted,

''Now, THEREFORE, In consideration of the premises, and the obligations of the said Caddie Bates to pay the said promissory notes and interest, it is hereby agreed as follows, to wit:

### ''FIRST.

''That the said Caddie Bates does hereby transfer, set-over, sell, assign and deliver to the said Capital State Bank of Idaho, Ltd., all her right, title, claim and demand to each and every of the said bonds, together with all interest accumulated and unpaid, and that shall hereafter accumulate on the said bonds, to be the sole property of the said Bank, and the said Capital State Bank of Idaho, Ltd., does hereby in consideration thereof, cancel each and every of the said promissory notes as fully paid, together with interest accrued thereon to date, and release henceforth the said Caddie Bates and said T. W. Bates, together with the sureties, from all claim and demand whatsoever accrued and accruing on account thereof, and does further agree to dispose of the said stock of the Pacific and Idaho Northern Ry. Co., and the said first mortgage bonds thereof and of the said claim against the said Idaho Midland Ry. Co. at the best price or prices obtainable, at such time or times as in the discretion of the said bank the largest amount may be realized therefor, and should said Bank be able to realize from the said property more than the amount for which the same is taken over, the said Bank will pay to Caddie Bates any surplus that shall be received from the sale of her said bonds in excess of the amount required to pay the said amount of the said obligations, together with interest thereon at 10% per annum from date hereof at the time of the sale of such bonds, and the necessary expenses incident thereto, together with attorney's fees, court costs and sale commissions to others, and any and all other necessary expenses that

may be incurred on account of collection of interest or principal of the said bonds or the sale thereof.

"IN WITNESS WHEREOF the said Bank by its Cashier, H. E. Neal, and the said Caddie Bates, have this day affixed their names and executed this agreement in duplicate.

"THE CAPITAL STATE BANK OF IDAHO, LTD.

"By H. E. NEAL, Cashier.

"CADDIE BATES."

Upon the execution of said contract by the appellant and said bank, the bank delivered to her all of the promissory notes described in said Exhibit "C" and she retained possession of them from that date until the date this action was commenced, January 29, 1910, or at least until January 3, 1910, when she made demand on the receiver for said bonds.

The appellant, Mrs. Bates, testified in her own behalf to many of the facts above set forth, and further that on the day that she deposited said mortgage bonds with the bank for safekeeping, she, at the request of her husband, took the bonds from her trunk and went with him to said bank; that she had no previous conversation or arrangement with the bank in relation to the matter, but that she deposited them there for safekeeping; that she handed them over the counter to the cashier; that nothing was said in respect to the transaction by either herself or her husband or by any officer of the bank; that she took no receipt for them and never asked for the interest coupons, nor asked for interest from the time she so deposited them up to the commencement of this suit, and she had not demanded a return of the bonds until shortly prior to the commencement of this suit in 1910.

Mr. Neal, the cashier of said bank, testified that said bonds were pledged by the appellant and her husband as collateral security for the notes hereinbefore referred to; that he gave a receipt to Mr. Bates for them, it being Exhibit "B" above referred to, dated August 23, 1901; that in April, 1904, the husband, T. W. Bates, having died, a new contract in writing was entered into between the appellant and the bank, a duplicate of which is Exhibit "C" above referred to and dated April 15, 1904; that thereupon the notes referred to were de-

livered to Mrs. Bates; that in October, 1906, the bank sold the bonds pursuant to the provisions of said contract, Exhibit "C," for something over $17,700; that that was the best price the bank could obtain for them, and that the bonds were forwarded to New York City for delivery to the purchaser; that the notes in question represented money loaned to T. W. Bates, the husband of appellant, by the bank, and had never been paid.

Meholin, the receiver of the bank and one of the defendants, testified that he had had the custody of the property of the bank since his appointment as receiver thereof, having received it from W. S. Bruce, his predecessor, but that he had not received the twenty-one bonds in question, nor did he ever have possession, custody or control of them.

There was some testimony in regard to the value and physical condition of said railroad company and as to the financial responsibility of one of the joint makers of said notes.

The appellant in rebuttal admitted the execution and delivery of said contract, Exhibit "C," and when asked why she entered into said contract she answered as follows: "I signed it because I considered it a duty, in the first place, and another is that they were going to bring suit against the Pin Road, against the bonds, and I did not want any suit. . . . . I wanted to do all I could to settle the indebtedness but I didn't want any suit." She also testified that she was not a sole trader at the time she deposited said bonds for safekeeping, or at all, and that she had not collected any money on said notes, and that none of the money secured by the $2,000 note signed by herself had been used for her sole and separate estate.

There is no substantial conflict in the evidence, further than the fact that Mrs. Bates testified that she deposited said mortgage bonds in said bank for safekeeping and the cashier of said bank testified that they were deposited as a pledge for the payment of said promissory notes. The evidence shows that she did not make a legal deposit of said bonds as collateral security, and as she testified positively that she never intended to so deposit them but that her intention was to deposit them

for safekeeping, we think the evidence sufficient to establish the fact that she deposited them for safekeeping and not as collateral security.

From the evidence we infer that Mr. Bates suggested to Mrs. Bates that she take said mortgage bonds to the bank and deposit them for safekeeping. She thereupon went with him to the bank and handed the bonds to the cashier and left the bank. Mr. Bates no doubt had some understanding with the cashier that said mortgage bonds should be deposited as collateral security, and after Mrs. Bates left the bank the cashier handed to Mr. Bates said Exhibit ''B'' above set forth, which recites that Mrs. Caddie Bates had deposited said mortgage bonds as collateral security. Mrs. Bates testified that she never saw that paper—knew nothing about it, and that she deposited the bonds for safekeeping and not as collateral. The evidence, we think, is sufficient to show that she deposited the bonds for safekeeping. It is contended by counsel for appellant that it was not the appellant's intention and that she did not deposit said bonds as collateral when she first placed them in the bank, and we fully agree with that contention. If said deposit was intended as collateral security, it was void under the provisions of sec. 2498 of the Rev. Stats., which provides that the husband has the management and control of the separate property of the wife during the continuance of the marriage but no sale or other alienation of any part of such property could be made or any lien or encumbrance created thereon unless by an instrument in writing signed by the husband and wife and acknowledged by her upon an examination separate and apart from the husband as upon a conveyance of real estate. However, having held that appellant neither had any intention of depositing said bonds as collateral security, nor did she do so, it is not necessary for us to discuss further the question of a void contract of deposit.

It is next contended by counsel for appellant that as said alleged contract of deposit referred to as Exhibit ''B'' was absolutely void, the contract of April 15, 1904, evidenced by Exhibit ''C'' was also void, as an attempt to ratify a void contract is itself void. Having held that there was no at-

tempt on the part of the appellant to deposit said bonds as collateral security for the payment of said promissory notes, so far as she was concerned, there was no void contract connected therewith and the contract, Exhibit "C," of April 15, 1904, was made long after the death of her husband, and, according to her testimony, was not based on the alleged deposit of August 23, 1901. That being true, the question is directly presented whether there was sufficient consideration for the contract evidenced by Exhibit "C," whereby she received said promissory notes and turned over to the bank said mortgage bonds to be sold and the proceeds applied in the payment of said promissory notes. That transaction occurred before the collection of said notes was barred by the statute of limitations, so far as the sureties were concerned. Appellant held said promissory notes from the 15th of April, 1904, until the 3d of January, 1910, without tendering them back to the bank. Thus she held said promissory notes for more than five years without, so far as the record shows, having any communication with the officers of the bank in regard thereto or in regard to said mortgage bonds. She evidently concluded that said transaction was ended, at least so far as said promissory notes were concerned. It is true, it was agreed that if said mortgage bonds sold for more than sufficient to pay the indebtedness represented by said promissory notes, the surplus was to be paid over to her. The record shows that said bonds were not sold for sufficient to pay the principal and interest due on said promissory notes at the date of the sale of the bonds, and therefore there was nothing due her from such sale.

We conclude that said contract was an executed contract. The notes had been delivered to the appellant, the bonds to the bank and the bank had sold the bonds, and if the bonds had sold for more than sufficient to pay said indebtedness, there would only remain the payment of the difference over to the appellant. As a consideration for said contract, Exhibit "C," the bank delivered said promissory notes to her and agreed to sell said bonds and pay any surplus to the appel-

lant, and we think that constituted a valid consideration for said contract.

In 1 Page on Contracts, sec. 322, it is stated: "Persons competent to contract are free to make such terms as they choose. Accordingly, if such persons, not acting under mistake, fraud and the like, select as a consideration some right or forbearance which the law recognizes, and receive just what they bargain for, the law will not inquire into the wisdom of accepting such a consideration, or the profit or loss arising out of the transaction. This principle is often expressed by the rule that mere inadequacy of consideration does not affect the validity of the contract."

Mrs. Bates was competent to contract, as she did in making contract Exhibit "C." She received just what she bargained for, and the law will not inquire into the wisdom of her action in accepting said notes as a consideration or the profit or loss arising to her out of the transaction. Our holding on this question decides the case in favor of respondents. While the answers contain many allegations and statements and averments that are immaterial and should have been stricken out on motion, we do not find any prejudicial error in the action of the court in that regard.

We have considered the other assignments of error, but will not refer to them at length in this opinion. It is sufficient to say that we find no reversible error in the record and that the judgment of the trial court must be *affirmed,* and it is so ordered, with costs in favor of respondents.

Stewart, C. J., and Ailshie, J., concur.