450 P.2d 310

The VILLAGE OF PECK, a municipal corpo-
ration of the State of Idaho, Plain-
tiff-Respondent,

v.

Roger DENISON and Louise Denison,
Defendants-Appellants.

No. 10159.

Supreme Court of Idaho.

Jan. 27, 1969.

Rehearing Denied March 4, 1969.

J. H. Felton, Lewiston, for defendants-appellants.

Blake, Givens & Feeney, Lewiston, for plaintiff-respondent.

McQUADE, Justice.

The evidence produced at the trial established the following facts. A controversy arose over the ownership of certain rights to water arising upon approximately thirty-five acres of land about one-half a mile west of the Village of Peck (hereafter referred to as the Village). This land is owned by appellant Denison at the present time and is hereafter referred to as the "Denison land." Running through the Denison land is Bear Creek, the waters of which empty ultimately into the Clearwater River. Within the Denison land and on the north side of Bear Creek there is a rocky and substantially brush-covered gully or draw with steep sides and sloping downward to Bear Creek. This gully is known locally, but not named officially, as Kayler Creek. In this gully are three springs designated in the record and on plaintiff's exhibit 3 as "A," "B" and "C," spring A being uppermost in the gully, spring B midway down the gully, and spring C lowermost in the gully and nearest Bear Creek. Without the interference of any man-made works, the water from these springs flows down the gully into Bear Creek, especially in wet weather. Such appears to be the natural state of Kayler Creek.

The history of man's use of these springs and Bear Creek is as follows. The Denison land was homesteaded in 1899 by one Adams, grandfather of James Kayler. It remained in the Kayler family from 1899 until 1937. The Kaylers met with officials of the Village in 1909 and created an agreement under which the Village would have use of the water from spring C, subject to the Kaylers' use of one inch of its water if other springs were not found. Since the Kaylers found another spring not here in issue, they abandoned the whole of spring C to the Village, and the Denisons do not now contest the right of the Village to the water from spring C. Likewise, the Village acquired by the 1909 agreement the right to augment its supply of water by tapping Bear Creek, which right also is not contested by the Denisons.

In 1912, the Kaylers gave the Village oral permission to develop spring B. In 1919, the Kaylers gave the Village oral permission to develop spring A. In 1925, the Village actually began using water from Bear Creek in dry periods. Since the year of initial use with respect to each of springs A, B and C, the Village has claimed and used all of the water flowing from them, except for losses in periods of turbidity at spring A and minor incidental losses. The Village water works remain the same now as they were thirty-eight years ago and consist essentially of an earthen dam at spring A, from which a pipe runs down to a catch basin at spring B, from which in turn a pipe runs finally down to spring C. The water so captured is then carried from spring C (and from Bear Creek in dry periods) by a pipe to the reservoirs of the Village of Peck. The Village then uses this water for domestic and firefighting purposes.

In 1937, the Kaylers deeded the Denison land to one Dorcy Willcox in fee, excepting, however, "all water rights being used and heretofore granted to the town of Peck, Idaho, and reserving an easement to go upon said premises for all necessary purposes in connection with the use of said water."

In November, 1965, the Denisons purchased the Denison land and received a warranty deed without exceptions. Somewhat more than a month later, in January, 1966, the Denisons received the title insurance report which noted the two exceptions of record relating to the Village's water rights on the land. Denison denied that he had knowledge of the Village's claim to water from springs A and B, but admitted he had knowledge before the purchase of its claim to water from spring C and Bear Creek. These are the facts relating to the water rights.

As to the easement, it is uncontroverted that the Village employees and agents went on the Denison land in any manner they chose and with all necessary equipment for the purpose of servicing their system.

In the action by the Village for equitable relief designed to preserve its water supply, the district court decreed that the Village had acquired the right to take all the water arising from springs A, B and C in Kayler Creek; that the Village had acquired the right to supplement its supply of water by tapping Bear Creek; that the Village had acquired the right to maintain its water works upon the Denison land; that the Village had acquired a right of ingress and egress over the Denison land for all purposes necessary to operate and maintain the water works. The court quieted title to these rights in the Village and permanently enjoined appellant Denisons from interfering with the rights of the Village in any way. The court further assessed against appellants and awarded the Village $6,000 as punitive and exemplary damages, plus coats and interest from the date of judgment.

■ The only water to which appellants contend the Village had no right is that flowing from springs A and B. The Village has advanced various theories upon which it contends it acquired a right to this water. However, we decide this appeal on the single ground that the water from these springs was public and therefore was duly appropriated to beneficial use by the Vil-

lage. The evidence showed that the water of springs A and B, when not captured for man's use, flows in natural channels down Kayler Creek Gully into Bear Creek, which in turn empties into the navigable Clearwater River. The Village has appropriated the entire supply of water from these springs to its beneficial use. No other persons, including appellants, had ever appropriated this water to beneficial use. Therefore the Village acquired a right to use all of the water from these springs according to the constitution and statutes of this State and the decisions of this Court.[1]

Appellant argues that, since the Village originally acquired a right to the waters from spring C pursuant to the terms of the 1909 written grant, it must be concluded that the water flowing from springs A and B are private waters to which rights may be acquired only by other writings. This contention is without merit because the testimony and photographic exhibits admitted into evidence showed that all of the water arising from these springs, if unobstructed, will flow naturally down the gully to Bear Creek. Hence the water is public and subject to appropriation by the constitutional method. Rights to water may be acquired in various ways under the law of this State, and the various means of acquisition are not necessarily mutually exclusive.

Appellants' main contention is that the district court erred in failing to require that the Village show it was entitled to some specific amount of water expressed in cubic feet per second under I.C. § 42–102. That section provides as follows:

"*Measurement of water.*—A cubic foot of water per second of time shall be the legal standard for the measurement of water in this state, and it shall be the duty of the department of reclamation to devise a simple, uniform system for the measurement and distribution of water."

Appellant then argues that any decree which omits such a measurement is void for vagueness. We agree with the contention of the respondent Village, however, that the cases cited by appellant[2] for the application of such a rule are not pertinent to the issue in the case at bar.

The requirement that a decree of water rights set out a specific water measurement is not imposed by I.C. § 42–102. That statute simply provides the basic unit of measurement of water for whatever purpose may be relevant. This Court has imposed the measurement requirement as a corollary to the basic policy of the conservation of water resources for beneficial use.[3] The Court has required such a measurement when the decree is intended to settle the rights of various appropriators who claim and use fluctuating amounts of water from the same source. Thus, if the decree awards an uncertain amount of water to one appropriator whose needs are vague and fluctuating, it is likely that he will waste water and yet have the power to prevent others from putting the surplus to any beneficial use. On this basis the decree in *Laidlaw* was construed to award specific amounts to at least two competing appropriators. The *Arkoosh* decree was too broad because it permitted one of several appropriators to demand an unspecified amount of water for domestic use. The *Hayes* decree was held vague in allowing one of two appropriators to take what he considered a "proper irrigation stream."

1. Idaho Const. art. 15, § 3; I.C. §§ 42–101, 42–103, 42–104, 42–106, 42–111; Martiny v. Wells, 91 Idaho 215, 419 P.2d 470 (1966); Nordick v. Sorensen, 81 Idaho 117, 338 P.2d 776 (1959); Maher v. Gentry, 67 Idaho 559, 186 P.2d 870 (1947); Jones v. McIntire, 60 Idaho 338, 91 P.2d 373 (1939); Hutchins, The Idaho Law of Water Rights, 5 Idaho L.Rev. 1 at pp. 3–4 (elements of a watercourse), 11 (public waters), 14–15 (private lands), 20–21 ("constitutional" method), 37 (priority of right) (1968).

2. Gile v. Laidlaw, 52 Idaho 665, 20 P.2d 215 (1933); Arkoosh v. Big Wood Canal Co., 48 Idaho 383, 283 P. 522 (1929); Hayes v. Flesher, 34 Idaho 13, 198 P. 678 (1921); Reno v. Richards, 32 Idaho 1, 178 P. 81 (1918); Lee v. Hanford, 21 Idaho 327, 121 P. 558 (1912).

3. Idaho Const. art. 15, § 3; I.C. § 42–101.

The *Reno* decree distributed among forty-four parties an amount of water exceeding the total flow of the stream. The *Hanford* decree was held defective because it awarded all of the water of a stream to one of two appropriators who could not use all of the water. The practice condemned by these cases was not simply the issuance of unmeasured decrees but that of awarding to one competing appropriator more water than he could beneficially use. These cases express a policy against waste irrespective of the technical legal error found to have permitted it.

In the present case, the Village has shown that it had used for beneficial purposes all of the water from springs A and B until appellants interfered with their right. Appellants have never applied any of this water to beneficial use. They do not allege that there is any excess which the Village cannot use. In these circumstances, it is not necessary that the decree set forth a specific amount of water to which the Village is entitled. A decree giving "all" of the water from a certain source to a senior appropriator is valid when all of the water is beneficially used, for there is then no waste.[4] On this issue the trial court found that the waters from springs A and B formed a natural stream flowing off the Denison land on which they arose; that therefore these were public waters; that the Village had acquired a right to the entire flow by diverting it and applying it to a beneficial use. It also follows from this finding that the Village has a secondary

easement in the Denison land for all purposes necessary to the maintenance and operation of its water system.[5]

Appellants assign error to the assessment of $6,000 punitive damages against them. Appellants contend that punitive damages may be awarded only in the event actual damages are shown and that the amount of punitive damages must bear a reasonable relationship to the amount of actual damages. Since the Village was awarded only injunctive relief, appellants argue that no punitive damages could be assessed under the cases said to support this rule.[6] It is generally true that the amount of punitive damages should bear a reasonable relationship to the amount of actual damages. This line of Idaho decisions also indicates that an award of punitive damages will be carefully scrutinized by the Court. However, none of these cases is authority for an unqualified rule that punitive damages may never be awarded unless actual damages are shown. Their holdings are wide of the mark in relation to the issue presented by the instant case.

Only by an action to quiet its title to the water rights and to permanently enjoin the Denisons from all interference with those rights could the Village insure a supply of water vital for the health and safety of its two hundred inhabitants. The absence of a showing of actual damages need not bar an award of punitive damages, for such a showing is not a talismanic necessity. The reason for such a require-

4. Lockwood v. Freeman, 15 Idaho 395, 98 P. 295 (1908); Drake v. Earhart, 2 Idaho 750, 23 P. 541 (1890); Malad Valley Irr. Co. v. Campbell, 2 Idaho 411, 18 P. 52 (1888); see Hutchins, op. cit. note 1 supra, at pp. 38–39 (entire flow of stream); although the Village of Peck became a municipality only after the events giving rise to this litigation, we would have found it difficult not to allow the appropriation of some excess water (had there been any in fact) under I.C. § 50–323 and its predecessors and Beus v. City of Soda Springs, 62 Idaho 1, 107 P.2d 151 (1940); see Hutchins, op. cit. at p. 44 (municipal use of water).

5. Ramseyer v. Jamerson, 78 Idaho 504 at 511–512, 305 P.2d 1088 at 1093 (1957); Simonson v. Moon, 72 Idaho 39 at 48, 237 P.2d 93 at 98 (1951); Gorrie v. Weiser Irrigation District, 28 Idaho 248 at 252, 153 P. 561 at 562 (1915); see also Hutchins, op. cit. note 1, supra, at pp. 52–57.

6. Zollinger v. Big Lost River Irrigation District, 83 Idaho 411 at 418, 364 P.2d 176 at 179 (1961); White v. Doney, 82 Idaho 217 at 224, 351 P.2d 380 at 384 (1960); Driesbach v. Lynch, 74 Idaho 225 at 232–233, 259 P.2d 1039 at 1043 (1953); Williams v. Bone, 74 Idaho 185 at 189, 259 P.2d 810 at 812–813 (1953).

ment is that it first insures that some legally protected interest has been invaded. It prevents the assessment of punitive damages against one who may have caused damage without legal injury. There is no reason why an award of equitable relief may not fulfill this same function, for in either case it is necessary first to show an invasion of some legally protected interest.[7] The Village plainly has done so in this case.

The facts relating to punitive damages are largely irrelevant to the issues of water rights and the easement. They deal with an antecedent dispute between the Village of Peck and the Denisons about keeping cattle in the Village and with actions taken by the Denisons after their purchase of the Denison land to vindicate their claims to the water on the land to the exclusion of the Village. The Denisons brought cattle into the Village near their home for one winter without consent of the Village trustees and created a nuisance; they attended most of the meetings of the Village trustees to make requests and demands; they demanded free water at their home as distinguished from the Denison land outside the Village; they failed to pay their Village water bill upon the refusal by the Village to give them free water; they tampered with their water meter after their water in the Village was shut off; they sprayed water on an official of the Village who came to remove the water meter; they threatened and carried out action to stop the flow of water from springs A and B on Denison land to the Village by disconnecting the pipe between springs B and C and by putting debris in spring C; they removed the Village's pipe from Bear Creek; they threatened to kill any Village official who might enter on Denison land; they threatened to build a feed lot near the springs to contaminate them.

The next consideration relevant to a determination of the propriety of an award of punitive damages is whether the party acted maliciously to violate another's legal right.[8] The record in this case supports the conclusion of the district court that the Denisons' interference with the water rights of the Village was maliciously undertaken. However, we do not consider as relevant to the issue of punitive damages those actions taken by the Denisons regarding their antecedent dispute with the Village over their cattle and water bills. Nor do we consider that the appearances of the Denisons at Village board meetings to request or to protest certain official Village actions are a proper basis for an award of punitive damges. Malice was shown by the threats and actions of the Denisons to disrupt the water supply of the Village by disconnecting the water works, putting debris in the springs, threatening to kill those persons who would attempt to repair the water system, and threatening to build a feed lot near the springs in order to contaminate the water. This type of misconduct created serious dangers to the health and safety of some two hundred people in the Village. The award of $6,000 punitive damages against appellants serves to punish such actions. On that basis the award was proper.

The judgment of the district court is affirmed. Costs to respondent.

TAYLOR and SPEAR, JJ., concur.

Decision reached before the retirement of TAYLOR, J.

McFADDEN, Justice (concurring in part and dissenting in part).

I concur in that portion of the majority opinion which affirms the judgment of the trial court quieting title in the Village of Peck as to its water rights and en-

---

7. See 22 Am.Jur.2d Damages § 241 (1965); cf. Sedgwick, Damages § 361 (1912).

8. Gonzales v. Hodsdon, 91 Idaho 330 at 333, 420 P.2d 813, at 816 (1966); Zollinger, note 6, supra, at p. 418, 179; Harrington v. Hadden, 69 Idaho 22 at 24–25, 202 P.2d 236 at 237 (1949); Gunnell v. Largilliere Company, Bankers, 46 Idaho 551 at 559, 269 P. 412 at 415 (1928); Unfried v. Libert, 20 Idaho 708 at 728–729, 119 P. 885 at 891 (1912).

joins interference by the appellants with those rights. I dissent from that portion of the majority opinion dealing with the assessment of punitive damages. It is my conclusion that a plaintiff does not waive a claim for punitive damages merely because he seeks equitable relief, but that under the facts of the instant case the respondent village failed to establish existence of actual damages and that an award of punitive damages is therefore not permissible.

While the majority opinion assumes, without discussion, that a court may award punitive damages in an action for equitable relief, the numerical weight of authority is to the effect that a plaintiff seeking equitable relief is not entitled to punitive damages, even though he may have been entitled to them in a suit at common law. See Superior Construction Co. v. Elmo, 204 Md. 1, 104 A.2d 581, 48 A.L.R.2d 932 (1954), and the many cases cited therein. Also see Sinclair Oil and Gas Co. v. Bishop, 441 P.2d 436 (Okla. 1967); Brady v. Trans World Airlines, 196 F.Supp. 504 (D.C.Del.1961); Orkin Exterminating Co. of South Florida, Inc., v. Truly Nolen, Inc., 117 So.2d 419 (Fla. App.1960); Prucha v. Weiss, 223 Md. 479, 197 A.2d 253 (1964); Monsanto Co. v. Cochran, 254 Miss. 399, 180 So.2d 624 (1965). To the same effect is Anno. 48 A.L.R.2d 947 wherein it is stated that

" * * * most of the jurisdictions which have considered the question take the view that punitive or exemplary damages may not be recovered in a court of equity. Some courts subscribing to this view have been content merely to state that such damages are 'not awarded' by or are 'not recoverable' in equity * * *. Other courts have taken the position that a court of equity does not have the inherent power to award such damages * * *. Still other courts, without reference to whether such power exists, have held or recognized that such damages may not be recovered in equity, upon one or both of the theories that an award of punitive damages is incompatible with the fundamental principles of equity * * *, and that by seeking relief in equity a litigant waives all claims to punitive damages * * *." 48 A.L.R.2d at 949.

In some jurisdictions where the distinction between actions in law and suits in equity has been abolished, the courts have recognized that the rationale for the rule precluding an award of punitive damages in an action for equitable relief has been eliminated. See for instance I.H.P. Corp. v. 210 Central Park South Corp., 16 A.D. 2d 461, 228 N.Y.S.2d 883, 885–886 (1962), in which the New York Supreme Court, Appellant Division, stated:

"It should be noted, at the outset, that the weight of authority in this State and elsewhere has, in the past, forbidden punitive damage awards in actions in which equitable relief is sought. The reasons are rooted in the historic procedural separation between law and equity—a separation which, in large measure, is no longer sustainable under modern code practice. Although the abolition of the ancient forms of action has not eliminated the several legal and equitable principles separately governing judicial remedies, it has removed outmoded procedural barriers against awarding complete relief in a single action."

See also Union Oil Co. v. Reconstruction Oil Co., 20 Cal.App.2d 170, 66 P.2d 1215 (1937).

Idaho Constitution Art. 5 § 1 provides:

"The distinctions between actions at law and suits in equity, and the forms of all such actions and suits, are hereby prohibited; and there shall be in this state but one form of action for the enforcement or protection of private rights or the redress of private wrongs, which shall be denominated a civil action; * * *."

Similarly I.R.C.P. 2 states that "There shall be one form of action to be known as 'civil action.'" This court has held that actions in law and equity may be joined in the same complaint. Wa Ching v. Con-

stantine, 1 Idaho 266 (1869); Anderson v. War Eagle Consolidated Mining Co., 8 Idaho 789, 72 P. 671 (1903); Anderson v. Cummings, 81 Idaho 327, 340 P.2d 111 (1959). And accordingly in order to afford complete relief in a single action, the district court dispenses both legal and equitable relief, as the occasion demands:

> "* * * one of the objects of our practice act and the provisions of our state Constitution in abolishing all distinctions between actions at law suits in equity, and giving our district courts full and complete jurisdiction both at law and in equity, was to rid our system of a multiplicity of suits and a vexatious and cumbersome procedure, and to give litigants full and complete relief in a single action, where under the old practice several suits were necessary to accomplish that result." Carroll v. Hartford Fire Ins. Co., 28 Idaho 466, 475, 154 P. 985, 987 (1916).

See also Bates v. Capital State Bank, 21 Idaho 141, 121 P. 561 (1912); Murphy v. Russell & Co., 8 Idaho 133, 67 P. 421 (1901); Addy v. Stewart, 69 Idaho 357, 207 P.2d 498 (1949). Since the district court is authorized under Idaho law to award complete relief in a single action, it has the authority to award punitive damages in an appropriate case, notwithstanding the fact that the complaint also raises an equitable cause of action.

Idaho courts have in the past awarded punitive damages in actions for equitable relief. In Driesbach v. Lynch, 71 Idaho 501, 234 P.2d 446 (1951), a plaintiff instituted an action for an injunction, compensatory damages, and punitive damages. The court first determined the equitable cause of action and granted an injunction, which was affirmed on appeal. The case was then returned to the district court for trial on the issue of damages. The jury awarded both compensatory and punitive damages. On the second appeal this court again affirmed the judgment of the lower court. Driesbach v. Lynch, 74 Idaho 225, 259 P.2d 1039 (1953). The district court had awarded both equitable relief and punitive damages in the single action, and although this court did not discuss the issue, in affirming the award of punitive damages the court indicated that the proper procedure had been followed.

California has also allowed punitive damages in an equitable action. In Union Oil Co. v. Reconstruction Oil Co., 20 Cal.App. 2d 170, 66 P.2d 1215 (1937), the trial court granted both an injunction and punitive damages. The appellate court upheld the award of punitive damages on the ground that in California there is but one form of action and courts are empowered to grant both legal and equitable relief, stating:

> "It is true that it is stated in Lightner Mining Co. v. Lane [161 Cal. 689, 120 P. 771] * * *, that the award of the gross value of mineral taken by a wilfull trespasser without deduction for expenses of mining and milling amounts to an assessment of punitive damages and it may be conceded that as a general rule equity does not award damages by way of punishment. United States v. Bernard (C.C.A.) 202 F. 728, 732. Nevertheless, it must be observed that in California there is but one form of action (section 307, Code Civ.Proc.), and that although this action as originally instituted was purely equitable in nature the claim for damages which arose during the trial and which came into existence through the persistent efforts of the Reconstruction defendants to bring the well to production was legal in character. It is our conclusion, therefore, that in dealing with this phase of the case the trial court correctly applied the above-mentioned legal rule in awarding as damages the gross amount received by the Reconstruction defendants from the sale of oil and gas without permitting any deduction for expenses incurred by them in extracting and marketing such oil and gas." 66 P.2d at 1222.

To the same effect are Bryson v. Bramlett, 204 Tenn. 347, 321 S.W.2d 555 (1958) and and I. H. P. Corp. v. 210 Central Park South Corp., 16 A.D.2d 461, 228 N.Y.S.2d 883 (1962). In the latter case the court stated that

"It is thus apparent that the rule which forbids combination of equitable relief with an award of punitive damages is founded upon an obsolete procedural division with no rational basis, apart from history, in modern substantive law or equity. If the facts warrant, it may be entirely appropriate to grant an injunction or another forms [sic] of equitable relief and also exact punitive damages as a deterrent against flagrantly unlawful conduct, whether embraced within an injunction or not. Such freedom to grant whatever judicial relief the facts call for is entirely consonant with substantive legal and equitable principles and with present-day concepts of procedural efficiency." 228 N.Y.S.2d at 888.

Similarly there are federal cases in which the trial court has awarded equitable relief and in the same action enforced statutory penalties for treble damages or other penalties comparable to punitive damages. See Leimer v. Woods, 196 F.2d 828 (8th Cir. 1952); Aladdin Mfg. Co. v. Mantle Lamp Co. of America, 116 F.2d 708 (7th Cir. 1941); Keller Products v. Rubber Linings Corp., 213 F.2d 382, 47 A.L.R.2d 1108 (7th Cir. 1954). See also: Orenstein v. United States, 191 F.2d 184 (1st Cir. 1951), in which although no punitive damages were ultimately awarded, the court entertained a suit for both injunctive relief and treble damages, and "Punitive Damages Held Recoverable in Action For Equitable Relief," 63 Columbia Law Rev. 175 (1963). It is my opinion that the federal decisions and those decisions from California and New York, although numerically a minority, are supported by the better reasoning.

Although an award of punitive damages is not necessarily prohibited in an action for equitable relief, it remains to be considered whether such an award was proper in the present case. This court has stated that an award of punitive damages must bear a reasonable relationship to the actual damages awarded. Williams v. Bone, 74 Idaho 185, 259 P.2d 810 (1953); Driesbach v. Lynch, 74 Idaho 225, 259 P.2d 1039 (1953); White v. Doney, 82 Idaho 217, 351 P.2d 380 (1960). In the case at bar, not only were no actual damages awarded, but the respondent failed to prove that any actual damages were sustained. For that reason it is my opinion that the award of $6,000 punitive damages cannot be upheld. The majority opinion points out that the conduct of the appellants was motivated by malice and was performed with an evil intent. However, the fact remains that, as far as the record shows, no actual damages were proven. Under such circumstances it is inappropriate to award punitive damages.

The majority opinion contends that the only purpose of requiring a showing of actual damages prior to awarding punitive damages is to insure that there is an independent cause of action and that the suit was not brought merely for the purpose of obtaining punitive damages, which purpose is equally accomplished by the request for equitable relief in the present case. Nonetheless, the requirement of a showing of actual damages serves a second purpose. It insures that a defendant will not be punished to an extent disproportionate to the actual damage he has done.

It should also be noted that Title 18, Chapter 43 of the Idaho Code provides criminal liability for interference with water rights and delivery devices, and under I.C. § 18–113 such conduct is punishable only as a misdemeanor. The deterrence of future conduct, which the majority opinion relies upon as a theory to justify the award of $6,000 punitive damages, is thus already accomplished by the legislative enactments governing such conduct. There is no need for further punishment by means of punitive damages.

This court has stated on several occasions that "Exemplary damages are not a favorite of the law, and the power to give such damages should be exercised with caution and within the narrowest limits." Williams v. Bone, 74 Idaho 185, 259 P.2d 810 (1953); Zollinger v. Big Lost River Irrigation Dist., 83 Idaho 411, 364 P.2d 176 (1961). As this court stated in Williams v. Bone, 74 Idaho 185, 259 P.2d 810 (1953):

"While there is no fixed or mathematical proportion, ratio, or relation between the amount of actual damages and the amount of exemplary or punitive damages, which in a proper case may be awarded, there is ample authority for the proposition that an award must not be so disproportionate to the actual damages sustained as to be the result of passion or prejudice rather than reason, and an award of exemplary damages must bear some reasonable relation or proportion to the actual damages, the real question being whether passion rather than reason dictated the verdict." 74 Idaho at 190, 259 P.2d at 813.

See also Annot. 17 A.L.R.2d 527 wherein it is stated that

"A large number of the decisions recognizing the rule that a showing of actual damages is a necessary predicate for an award of exemplary damages use language indicating that there must actually be a finding and award of actual damages before recovery of punitive damages is justified." (at 535)

The majority opinion states that "The absence of a showing of actual damages need not bar an award of punitive damages, for such a showing is not a talismanic necessity." There is, however, no authority cited for such a statement. Similar language is found in this court's opinion in Crystal Dome Oil & Gas Co. v. Savic, 51 Idaho 409, 6 P.2d 155 (1931), but that case is distinguishable from the case at bar. There the court stated that in a replevin action the jury may award punitive damages where malice is proved and that

"In such cases, definite proof of actual damages is unnecessary. To show that a legal right has been violated is sufficient, the violation itself supplying a foundation for nominal damages." 51 Idaho at 411, 6 P.2d at 156.

In fact, however, actual damages were proved in that case, and, in any event, no punitive damages were awarded. Therein the judgment of the lower court reveals that the plaintiff was awarded either the return of an oil and gas report which the defendant had appropriated, or its value, plus damages in the amount of $1,000 for the loss of use of the report during the month the defendant retained it. The $1,000 was actually a compensatory award for loss of use of the report, not punitive damages. The language of the decision quoted above, then, is no more than dictum and, additionally, is stated without any authority for support. Subsequent decisions of this court have not followed the statement in Crystal Dome Oil & Gas Company v. Savic, but rather have held that there must be a reasonable relationship between actual and punitive damages. Williams v. Bone, 74 Idaho 185, 259 P.2d 810 (1953); Driesbach v. Lynch, 74 Idaho 225, 259 P.2d 1039 (1953); White v. Doney, 82 Idaho 217, 351 P.2d 380 (1960). This rule, in my opinion, is the better one. Absent a showing of some actual damage, it cannot be said that an award of $6,000 punitive damages is reasonably related to the actual damage. Accordingly I would reverse the decision of the district court in this regard.

SMITH, C. J., concurs in the foregoing. (SMITH, C. J., participated in this decision prior to retirement.)