(No. 4318. July 21, 1927.)

## C. A. McMASTER, Respondent, v. L. A. WARNER, Appellant.

[258 Pac. 547.]

SALES—DOCTRINE OF IMPLIED WARRANTY, HOW FOUNDED—EVIDENCE— VERDICT OR FINDING ON LAW AND EVIDENCE—NO RECOVERY FOR DAMAGES ON THEORY OF BREACH OF IMPLIED WARRANTY.

1. Doctrine of implied warranty is founded on actual or presumed knowledge by vendor, and does not impute knowledge as to qualities or fitness which no human foresight or skill can attain and raise an implied warranty in respect to them, when vendor and purchaser are in equal condition as to means of knowledge.

2. Any party to law action has right to insist on a verdict or finding based on law and evidence in the case and not, in absence of evidence, on mere inference or conjecture.

3. Where thoroughbred heifer developed lump-jaw eight or nine months after sale, buyer *held* not entitled under evidence to recover for damages resulting on theory of breach of implied warranty.

APPEAL from the District Court of the Eleventh Judicial District, for Twin Falls County. Hon. William A. Babcock, Judge.

Publisher's Note.

1. See 24 R. C. L. 178.

See Evidence, 23 C. J., sec. 1795, p. 51, n. 76, p. 52, n. 80, 81; sec. 1797, p. 55, n. 23.

Sales, 35 Cyc., p. 409, n. 95, p. 412, n. 10, p. 465, n. 92.

Action on promissory note. Judgment for plaintiff. *Affirmed.*

Sweeley & Sweeley and Stephan & North, for Appellant.

Representations made by respondent constitute an express warranty. (35 Cyc. 386 and 388; *Young v. Van Nata,* 113 Mo. App. 550, 88 S. W. 123; *Ellison v. Simmons,* 6 Penne. (Del.), 200, 65 Atl. 591; 24 R. C. L. 164; *Powell v. Chittick,* 89 Iowa, 513, 56 N. W. 652; *Mitchell v. Pinckney,* 127 Iowa, 696, 104 N. W. 286; *Swift & Co. v. Redhead,* 147 Iowa, 94, 122 N. W. 140; *McClintock v. Emick,* 87 Ky. 160, 7 S. W. 903; *Luitweiler Pumping Engine Co. v. Ukiah Water Imp. Co.,* 16 Cal. App. 198, 116 Pac. 707, 712; *Shuman v. Heater,* 76 Neb. 119, 106 N. W. 1042; *Chestnut v. Ohler* (Ky.), 112 S. W. 1101.)

An implied warranty arises out of a state of facts which show that it was the intention of the parties at the time of the sale that the article was to be fit and suitable for the purpose for which it was purchased. (35 Cyc. 388 and 399; 24 R. C. L. 187; *Breen v. Moran,* 51 Minn. 525, 53 N. W. 755; *Wolsey v. Zieglar,* 32 Okl. 715, 123 Pac. 164; *Morse v. Union Stock Yards,* 21 Or. 289, 28 Pac. 2, 14 L. R. A. 157; *Bunch v. Weil Bros. & Bauer,* 72 Ark. 343, 80 S. W. 582, 65 L. R. A. 80; *Fairbank Canning Co. v. Metzger,* 118 N. Y. 260, 16 Am. St. 753 and note, 23 N. E. 372; *Hausken v. Hodson-Feenaughty Co.,* 109 Wash. 606, 187 Pac. 319; *Shaw v. Smith,* 45 Kan. 334, 25 Pac. 886, 11 L. R. A. 681; *Edwards v. Dillon,* 147 Ill. 14, 37 Am. St. 199, 35 N. E. 135; *Grisinger v. Hubbard,* 21 Ida. 469, Ann. Cas. 1913E, 87, 122 Pac. 853.)

Appellant properly pleaded and proved warranty and breach of warranty and damages. (35 Cyc. 423 and 446 (H); *Frey v. Failes,* 37 Okl. 297, 132 Pac. 342; 24 R. C. L. 164; *Luitweiler Pumping Engine Co. v. Ukiah Water Imp. Co., supra; McCann v. Ullman,* 109 Wis. 574, 85 N. W. 493.)

Whether there were a warranty of the animal in question and a breach of warranty were questions of fact for the jury. (35 Cyc. 481; 24 R. C. L. 165, par. 438; *Woolsey v. Zieglar, supra; McDonald Mfg. Co. v. Thomas,* 53 Iowa, 558, 5 N. W. 737; *McLennan v. Ohmen,* 75 Cal. 558, 17 Pac. 687; *Unland v. Garton,* 48 Neb. 202, 66 N. W. 1130; *Hodges v. Smith,* 158 N. C. 256, 73 S. E. 807.)

Bothwell & Chapman, for Respondent.

There is no implied warranty as to a latent defect, of which, in the nature of things, the seller could not, and did not, have knowledge. (Cooley on Torts, 403; 2 Cyc. 333; 35 Cyc. 376, 410, 412, 450; 24 R. C. L. 179, 202; *Haines v. Rowland,* 35 Ida. 481, 207 Pac. 428; *Dorsey v. Watkins,* 151 Fed. 340; *Court v. Snyder,* 2 Ind. App. 440, 50 Am. St. 247, 28 N. E. 718; *Snowden v. Waterman,* 100 Ga. 588, 28 S. E. 121; *Shaw & Shaw v. Jacobs,* 89 Iowa, 713, 48 Am. St. 411, 55 N. W. 333, 56 N. W. 684, 21 L. R. A. 440; *Rhynas v. Keck,* 179 Iowa, 422, 161 N. W. 486; *Burnett v. Hensley,* 118 Iowa, 575, 92 N. W. 678; *Farrar v. Peterson & Co.,* 72 Wash. 482, 130 Pac. 753, 133 Pac. 594, 44 L. R. A., N. S., 1092; *Lambert v. Armentrout,* 65 W. Va. 375, 64 S. E. 260, 22 L. R. A., N. S., 556; *Newell v. Clapp,* 97 Wis. 104, 72 N. W. 366; *White v. Stelloh,* 74 Wis. 435, 43 N. W. 99; *McQuaid v. Ross,* 85 Wis. 492, 39 Am. St. 864, 55 N. W. 705, 22 L. R. A. 187.)

By his evidence that the defect complained of was obvious and discoverable on simple inspection and was, in fact, observed at a considerable distance by the witness, James Wallace, and in the absence of both allegation and proof of either knowledge or fraud on the part of respondent, there is no implied warranty as to such defect and the doctrine of *caveat emptor* applies. (35 Cyc. 410–412; *Ehrsman v. Brown,* 76 Kan. 206, 91 Pac. 179, 15 L. R. A., N. S., 877; *Burnett v. Hensley, supra; Hanson v. Hartse,* 70 Minn. 282, 68 Am. St. 527, 73 N. W. 163; *Dorsey v. Watkins,* 151 Fed. 340.)

Appellant failed to prove that he sustained any damage from any wrongful act of respondent, but the evidence conclusively and affirmatively shows that the damage suffered by him was the direct result of his own negligence and want of care. The evidence does not establish any legal or proper measure of damages. (17 C. J. 753, 754, 756, 759; *American Exchange Bank v. Goubert,* 67 Misc. Rep. 602, 124 N. Y. Supp. 817.)

The court properly directed the verdict in favor of plaintiff upon failure of defendant to prove the allegations of his counterclaim and cross-complaint by any evidence sufficient to support a verdict in his favor. (*Holt v. Spokane & Palouse Ry. Co.,* 4 Ida. 443, 40 Pac. 56; *Libby v. Pelham,* 30 Ida. 614, 166 Pac. 575; *Milner v. Pelham,* 30 Ida. 594, 166 Pac. 574; *Jensen v. McConnell Bros.,* 31 Ida. 87, 196 Pac. 292; *Lane v. Oregon Short Line R. Co.,* 34 Ida. 37, 41, 15 A. L. R. 197, 198 Pac. 671; *Crabill v. Oregon Short Line R. Co.,* 34 Ida. 251, 200 Pac. 121.)

"In an action by the vendee of personal property for breach of warranty, it must be alleged that the vendee believed and relied upon, and purchased on the strength, of such warranty." (*Haines v. Rowland,* 35 Ida. 481, 207 Pac. 428.)

Where the buyer of goods relied on his own examination prior to the purchase, and was induced to buy on his own judgment from the examination, he has no claim for breach of warranty, express or implied, against the seller." (*Casazza v. Rosenblum,* 180 N. Y. Supp. 253.)

McNAUGHTON, Commissioner.—This was an action before the district court, sitting with a jury, on a promissory note due on or before January 1, 1920, for $3,000 with interest, and providing for reasonable attorney's fees in case of suit. The note was given by defendant to plaintiff in settlement for pure-bred cattle sold defendant. Defendant admits executing and delivering the note but denies there is anything due plaintiff, and in this connection sets up a counterclaim in the amount of $8,609.80, alleged as due de-

fendant from plaintiff on account of an alleged breach of an implied warranty of a heifer sold defendant by plaintiff in January, 1919. Defendant asks judgment in the amount of the difference between the sum of the note and interest and the amount of the counterclaim.

The note with a computation of interest was introduced in evidence and a stipulation was made that in case of recovery by plaintiff, attorney's fees should be fixed by the trial judge. After receiving the evidence on the counterclaim, the jury upon motion was instructed that the evidence was insufficient to support the allegations of the counterclaim and to return a verdict for plaintiff in the sum of said note and interest. The court allowed $500 attorney's fees, and judgment for these sums was entered. Defendant's motion for a new trial was denied, and the case is here on appeal from said judgment and the order denying the motion for a new trial.

Error is predicated upon the action of the trial judge in instructing the jury to return a verdict for plaintiff and denying defendant's motion for a new trial.

The evidence discloses that in January, 1919, and prior thereto, appellant Warner was the owner of a ranch near Buhl embracing three or four hundred acres of rather high priced land thought to be suitable for the breeding of purebred cattle, and that then and for some time previous respondent had been engaged in the business of breeding registered Shorthorn cattle near Twin Falls, Idaho. Appellant discussed with respondent the matter of entering into this business and it was recommended by respondent as more profitable on high priced land than grain farming. Appellant viewed respondent's cattle prior to the auction sale held on January 15, 1919, in company with respondent, and at that time a heifer named "Golden Lady" was recommended by respondent as a high class animal and one for which appellant should bid as high as $300, if he wanted any cattle at all. Some fifty head of cattle were sold in the auction ring on January 15, 1919. Appellant bought six at this sale, five of which had been consigned by respondent, and one

by a third party. Among those purchased by appellant was this heifer, "Golden Lady," consigned to the sale by respondent, the purchase price being $285, all or part of this sum being included in the note. She was taken to appellant's place that day or the next.

The evidence shows she was well bred, well built and a high class heifer in apparent good health on the day of the sale. She was put in the yard maintained for pure-breds at appellant's place and was daily under the care of appellant's herdsman, or foreman. She remained apparently sound and healthy through the latter half of January, and through February, March and April. In May she dropped a calf which was sound and healthy. The heifer gave more milk than this calf could take during the first four or six weeks, and was milked out daily by the man in charge. Although under his supervision all this time, no lump or sign of lump-jaw was observed. In the latter part of the summer or early fall, a lump about the size of a walnut was observed on the right side of her jaw. This disappeared and therefore caused no alarm, but late in October it was discovered she had actinomycosis, or lump-jaw. Several other cattle belonging to defendant developed lump-jaw about this time but this heifer was the first of those infected to discharge pus. The latter part of October or the first part of November, the pus was cleaned from the fistula and medicine applied. At this time a scar about the size of a quarter dollar was observed near the fistula.

Later, in January, 1920, Doctor Erskine, a qualified veterinary surgeon, was called to treat defendant's cattle. He found this heifer affected with actinomycosis in the abscess form. He shingled the under part of her head and found a long thin scar between the jaw-bones about three or four inches long. He testified it had the appearance of a scar resulting from lump-jaw, but he stated it was practically impossible to state how old the scar was as scar tissue when formed changes but slightly. Others testified that this scar looked like a rather old one.

On May 15, 1920, the heifer was shipped to Ogden and sold for beef. Appellant offered evidence of considerable damage to his cattle on account of lump-jaw, and also damage to his farm as resulting from his cattle becoming infected with lump-jaw. Owing to the view we take of this case, we deem it unnecessary to discuss the question of damages.

Mr. Wallace, who assisted in the treatment given the heifer in October, testified that he attended the sale in January as a spectator, and at that time, while respondent and other bidders were inspecting the heifer, he observed, as she came past him, that the hair on her jaw was rough and stood out, and that under it there was a lump or swelling as thick as two dollars and as big around as a quarter dollar in exactly the same place as the lump which they had treated. However, he did not examine the heifer.

The court had the benefit of the testimony of several veterinary surgeons of wide experience and considerable scientific research in the history and nature of the disease, actinomycosis, commonly called lump-jaw. Their testimony tends to show it to be an infectious, as distinguished from a contagious disease; that is, that the disease germ lodges in the tissues of the animal ordinarily in an abrasion in the tissue near the teeth, and as the germs multiply they set up an infection known as lump-jaw; that it does not enter the system and is not communicated directly in the manner most systemic diseases are; that the germ that sets up the infection is known as the ray fungus, and grows and is nursed on weeds, grains or grasses, usually in the hull or chaff of the seeds; that the germ is not easily destroyed; that the disease is supposed to be communicable from one animal to another usually by the dropping of the pus containing the germ upon the food taken into the mouth of other animals. Practically all the veterinarians agree that it has not been scientifically proved that the germ from one animal will infect another animal, and all of them admitted that some eminent authorities hold that the germ, ray fungus, loses its power of transmission as soon as it enters

the animal's body on account of undergoing some form of involution.

In this case, the opinion of the experts is that the germ, ray fungus, whether grown upon a plant or coming from an infected animal, upon lodging in the tissues or in an abrasion may set up the infection known as lump-jaw. All the veterinarians agreed that the period of incubation after lodging is not known. However, in this case, none of the veterinarians ventured an opinion, or were asked an opinion, as to when the heifer likely became infected, whether before or after the sale, or whether it was probable upon the facts as shown in this case that in January, 1919, she was infected or then carried any ray fungus germs at all in any state of development.

The theory of appellant seems to be that it is shown that the heifer carried these germs on the day of the sale and was not fit for the purpose for which she was purchased, and that this constitutes a breach of the implied warranty of fitness for that purpose.

[1] We find the general rule as to implied warranty is aptly stated by the Wisconsin court in *McQuaid v. Ross,* 85 Wis. 492, 39 Am. St. 864, 55 N. W. 705, 22 L. R. A. 187, wherein the court said:

"The doctrine of implied warranty appears to be founded on an actual or presumed knowledge by the vendor, as manufacturer, grower, or producer, of the qualities and fitness of the thing sold for the purpose for which it was intended or is desired, so far as such knowledge is reasonably attainable. The rule must be held to have a rational foundation, and to be not of a purely arbitrary character. It does not impute to the seller knowledge as to qualities or fitness which no human foresight or skill can attain, and raise an implied warranty in respect to them, when the vendor or purchaser are in equal condition as to the means of knowledge."

[2] In this case we find nothing in the record showing that respondent, McMaster, knew or should have known that this heifer was likely to become infected with lump-jaw.

Here, the only manner in which the heifer became unfit for the purpose for which she was purchased arose solely from the fact that at some time she was attacked by the germ ray fungus with disastrous results to her as well as other animals of appellant's herd. It might be said that on account of the scar described by Doctor Erskine and others a suspicion might arise that she might have been affected with and operated on for lump-jaw before the sale. This reasoning is unsound for the rule has been repeatedly announced in this state that every party to a law action has a right to insist upon a verdict or finding based upon the law and the evidence in the case and not, in the absence of evidence, upon mere inference or conjecture. (*Hargis v. Paulson,* 30 Ida. 571, 166 Pac. 264; *Antler v. Cox,* 27 Ida. 517, 149 Pac. 731; *Holt v. Spokane etc. Ry. Co.,* 4 Ida. 443, 40 Pac. 56.)

[3] Upon the argument, our attention was called especially to the case of *Young v. Van Natta,* 113 Mo. App. 550, 88 S. W. 123. That case was based solely upon the alleged breach of an express warranty. We think the decision in that case right and the reasoning sound, but it seems clearly distinguishable from the case at bar. There the bull was examined by the purchaser but he stated that he wanted the animal for immediate service and he would have to rely upon the seller's representations as to his breeding qualities, whereupon the seller expressly stated and represented that the bull was a "quick server and a sure getter." He was immediately taken to the plaintiff's farm but he would not serve. A veterinary was called at once. He found the animal sick, and in a short time the bull died. A post-mortem disclosed tuberculosis of the bowels, and the evidence was convincing that he was affected with this disease at the time of the sale to the extent of making him then valueless as a breeder. But in this case we are dealing with a heifer purchased after and upon a personal inspection by the buyer. She dropped and nursed her calf, and upon this heifer the infection complained of was not discovered until some eight or nine months after the sale. And here we

are without opinion ventured by any of the veterinarians that she was not sound at the time of the sale. We have not overlooked the testimony of the witness, Wallace, as to the lump on the heifer's jaw on the day of the sale. We do not think this helps appellant's case. He made no inspection or examination of what he observed. The lump or swelling, if any, was under the hair which appeared to stand out, and from his testimony it would be merely speculation whether any lump at all existed; and then, from the expert testimony of the veterinarians offered by appellant, it would be only speculation as to whether this was a symptom of the lump-jaw that later existed, or any ailment at all.

The record does not disclose evidence sufficient to sustain a finding of any catalogue representation which failed, or any statement by respondent which could be construed as a warranty which failed, or breach of any implied warranty.

We therefore recommend that the judgment be affirmed, with costs to respondent.

Varian and Brinck, CC., concur.

PER CURIAM.—The foregoing is approved as the opinion of the court, and the judgment is affirmed, with costs to respondent.