338 P.2d 766

**Pearl Hillman NORDICK and Mabel Hillman Quayle, Plaintiffs-Respondents,**

v.

**Chris SORENSEN and Douglas Sorensen, Defendants-Appellants.**

No. 8633.

Supreme Court of Idaho.

April 9, 1959.

Rehearing Denied May 18, 1959.

Merrill & Merrill, Pocatello, for respondents.

O. R. Baum, Ruby Y. Brown, and Gee & Hargraves, Pocatello, for appellants.

SMITH, Justice.

Plaintiffs seek redress in their first cause of action:

(1) That plaintiffs be decreed a prior right against defendants to the use of 125 miner's inches for irrigation purposes of the water of Gooseberry creek and its tributaries, situate in Bannock County, to which plaintiffs allege entitlement by reason of a prior decree, and

(2) That defendants be held in contempt and punished accordingly for having willfully violated the trial court's order restraining them from interfering with plaintiffs' use of such decreed water.

Plaintiffs seek further redress in their second cause of action:

(3) For damages to plaintiffs' crops allegedly caused by defendants' wrongful diversion from Gooseberry creek of plaintiffs' decreed water.

The issues were framed by plaintiffs' amended and supplemental complaint; a restraining order or injunction pendente lite directed against defendants, issued June 27, 1951; defendants' answer and cross-complaint, and plaintiffs' answer to the cross-complaint. Following is a brief résumé of the relevant facts.

Gooseberry creek, which flows through plaintiffs' lands, derives its water supply principally from melting snows in mountainous areas. Its flow has never exceeded a maximum of 125 miner's inches, except on rare occasions during flood periods; during the irrigation season its flow varies from the flood stage maximum, to a minimum not exceeding 60 miner's inches.

The waters of Gooseberry creek were first appropriated in 1872 and 1873 by the grantors, predecessors in interest, of Ira King Hillman.

A controversy having arisen between Ira King Hillman and subsequent users of the waters of Gooseberry creek, Hillman commenced action May 9, 1889, in the district court in Bingham County, wherein his land,

irrigated in part by the waters of Gooseberry creek, then was situate, for an adjudication of the waters of said creek. Hillman's appeal from the decree attempting adjudication resulted in reversal of the district court with directions to enter its decree in favor of Hillman "for all the waters of Gooseberry creek, and the tributaries thereof, to the extent of 125 inches, * * * and enjoining the said defendants, and each of them, and the agents and servants thereof, *from in any manner interfering* with said right to the waters of said creek, and the tributaries thereof, to the extent of said 125 inches." Hillman v. Hardwick, 3 Idaho 255, 262, 28 P. 438, 440. The district court upon remittitur entered the decree as directed, June 6, 1892.

Plaintiffs are daughters of Ira King Hillman, and successors by inheritance of his interest in the lands, described in their amended and supplemental complaint.

Defendants recognize the decree in Hillman v. Hardwick, supra.

Defendants by cross-complaint allege their ownership of certain lands situate generally in the watershed of Gooseberry creek, above the lands of plaintiffs. They then allege that for 50 years last past they and their predecessors in interest have used approximately 80 miner's inches of the waters of upper Gooseberry creek and its tributaries "and other sources of supply" in the irrigation of 80 acres of their land; they sought decree of the court awarding them the right to the use of 80 inches of water for irrigation of 80 acres of their land. Later, April 26, 1957, after conclusion of the trial, defendants filed a motion to amend their cross-complaint so as to allege their use of approximately 35 miner's inches of the waters of upper Gooseberry creek for more than 50 years last past upon 35 acres of their lands; plaintiffs' abandonment of the use of the 35 miner's inches of the decreed waters of Gooseberry creek by their failure to apply it to beneficial use and, that defendants had so applied it for more than five years prior to the commencement of this action from alleged points of diversion.

Plaintiffs, upon succeeding to the interests of their father, they having each inherited a separate parcel of his lands, entered into a contract in writing during March, 1945, whereby they agreed to an equal division and ownership of the right to the use of 125 miner's inches of the waters of Gooseberry creek and its tributaries decreed in favor of their father in the case of Hillman v. Hardwick, supra; that one-half of the decreed waters and the ditches and ditch rights shall be the property of Pearl Hillman Nordick, appurtenant to her inherited tract of the land, and one-half thereof to the property of Mabel Hillman Quayle, appurtenant to her inherited tract of the land; they then recognized that dur-

ing certain seasons of the year the most beneficial use of the water requires rotation of irrigation waters and they agreed upon a plan of rotation commencing the year 1945. They agreed that the contract be construed as covenants running with the land.

The district court, at the conclusion of the trial, entered its findings of fact and conclusions of law, followed by its decree adjudging each plaintiff to be the owner of her respective tract of land as alleged in the amended and supplemental complaint, and that the land was arid in character and incapable of producing ordinary agricultural crops without irrigation; the court then fixed the duty of water for the irrigation of said land at one miner's inch per acre over and above transportation losses.

The court then adjudged plaintiffs to have a prior right over the defendants to all the waters of Gooseberry creek and its tributaries, including springs arising upon defendants' land, which if not interfered with would flow into Gooseberry creek, up to the measure of 125 miner's inches of water for use upon the lands of plaintiffs, pursuant to the decree entered June 6, 1892, in Hillman v. Hardwick, supra.

The court then decreed that 123½ inches of the decreed water shall be measured (1) at the point where Upper Hillman Ditch takes out of Gooseberry creek in the Southeast Quarter of the Southeast Quarter of Section 18, Township 13 South, Range 38 East of the Boise Meridian (the decree, indicating the Southeast Quarter of the South*west* Quarter, in said Township and Range, appears by the record to be a clerical error), and (2) at the point where Lower Hillman Ditch takes out of Gooseberry creek in the Northwest Quarter of the Northeast Quarter of Section 16, of said Township and Range; and 1½ inches of the decreed water shall be measured at the confluence of Chicken creek and Gooseberry creek at a point in the Southwest Quarter of the Southwest Quarter of Section 10, in said Township and Range. The court then restrained defendants from diverting any of the waters of Gooseberry creek or its tributaries whenever the decreed rights of plaintiffs to the waters of such stream are not filled.

The court found, inter alia, that defendants wrongfully diverted the waters of Gooseberry creek, and its tributaries, at times when defendants knew, or should have known, that the flow of said creek was less than plaintiffs' decreed right of 125 miner's inches and when plaintiffs were in need of the waters for irrigation of said lands; particularly, the court found that such wrongful diversion occurred at divers times notwithstanding its June 27, 1951 order, restraining defendants from interfering with the rights of plaintiffs to the primary use of said 125 inches of decreed waters.

The court then decreed that defendants had violated the restraining order, by virtue of their acts aforesaid, and adjudged each of them guilty of contempt of court, and attempted punishment in excess of the maximum extent provided by law ($500 fine and 5 days in jail).

The court, pursuant to its findings in the premises, adjudged plaintiff Pearl Hillman Nordick entitled to judgment against defendants for crop damage sustained by her by defendants' improper use and diversion of said waters during the times they illegally diverted same, in the sum of $1,000 with interest; and adjudged plaintiff Mabel Hillman Quayle to be entitled to judgment against defendants for like reasons and in like amount, together with costs.

The court adjudged defendants entitled to nothing on their cross-complaint and ordered it dismissed.

Defendants by specification of error question the jurisdiction of the district court to entertain the contempt proceeding, though incidental to and part of plaintiffs' first cause of action, and to assess the penalty which defendants assert constitutes assessment of damages in the contempt proceeding.

Defendants' assertion that "this is an action for contempt and damages" is not truly descriptive. Rather, by their action, plaintiffs seek to quiet their title to their decreed irrigation water, and restrain defendants from interfering with plaintiffs' use of the water when needed. Plaintiffs by a separate cause of action then seek recovery of crop damage caused by defendants in depriving plaintiffs of their decreed water. Those matters are set forth in plaintiffs' original complaint filed June 13, 1951.

The restraining order, after a show cause hearing, issued June 27, 1951, enjoining defendants from interfering with plaintiffs' use of their decreed water when needed.

It was not until defendants allegedly had willfully, repeatedly and flagrantly violated the restraining order that plaintiffs filed their amended and supplemental complaint October 1, 1956, directing the trial court's attention to such violations, and suggesting that defendants be punished for contempt "in form and manner provided by law."

Defendants cite Levan v. Richards, 4 Idaho 667, 43 P. 574, as prohibiting an award of damages in a contempt proceeding. In that case the district court fined petitioner Levan $25 as a penalty, and assessed $298.25 damages as the costs and expenses which one Ranson and others, plaintiffs in a separate action, had incurred after petitioner had stopped or delayed a court directed survey of mining property. The court then ordered petitioner to pay the $298.25, by depositing it with the Clerk of the Court for payment to Ranson, et al., in reimbursement of their damages. The

court thus assessed damages against petitioner in the contempt proceeding for the loss or injury suffered by Ranson, et al., as the result of petitioner's refusal to comply with the court's order. This was held to be improper simply because there was not then, (and there is not now), any statute authorizing the assessment of damages caused by and dependent upon the contempt, for the use and benefit of the party injured by the contempt.

The case here presents a different situation. Plaintiffs' damage, shown by their second cause of action, did not grow out of nor depend upon defendants' violation of the restraining order. Plaintiffs suffered crop damage when deprived of their decreed irrigation waters by defendants as of times prior to the issuance of the restraining order, June 27, 1951, as well as after its issuance, as shown both by plaintiffs' original complaint and by their amended and supplemental complaint.

 It is thus clear that the damage sustained by plaintiffs came about independently of the contempt. Moreover, plaintiffs at no time sought to have assessed against defendants any damage as growing out of the contempt, to be paid over to them. Furthermore, the amount assessed by the court in the contempt proceeding, was assessed as a fine and not as plaintiffs' damages, and no part of the fine is adjudged to be paid to the plaintiffs or either of them. I.C. §

7–610. Levan v. Richards, supra, thus supports the district court in its disposition of the contempt matter, in that the court in no wise exceeded its jurisdiction by acting in violation of its statutory authority.

 Both the parties concede that in the contempt proceeding the portions of the fine and imprisonment in excess of that prescribed by statute, I.C. § 7–610, are invalid. A fine or sentence in excess of that authorized by law is valid to the extent that the court had jurisdiction to impose it, but void as to the excess, and such is not grounds for reversal. In re Chase, 18 Idaho 561, 110 P. 1036; Matter of Setters, 23 Idaho 270, 128 P. 1111; In re Bottjer, 45 Idaho 168, 260 P. 1095; In re Jennings, 46 Idaho 142, 267 P. 227; State v. Eikelberger, 71 Idaho 282, 230 P.2d 696.

 The contempt herein grew out of a civil action and hence partakes of its nature. "A civil contempt may be prosecuted in the cause out of which it arose and not as a separate proceeding with a title of its own." 12 Am.Jur., Contempt, p. 433, § 66.

"The distinctions between actions at law and suits in equity, and the forms of all such actions and suits, are hereby prohibited; and there shall be in this state but one form of action for the enforcement or protection of private rights or the redress of private wrongs, * * *." Idaho Const., Art. 5, § 1; Idaho Code, § 5–101. In Anderson v. Whipple, 71 Idaho 112, 227 P.2d

351, 356, this Court, speaking with reference to the aforesaid provisions of the Constitution and the Code, said:

"These and other code provisions were intended to simplify pleading and procedure, and to eliminate outmoded common law forms and technicalities which often frustrated the administration of justice. Under our system, legal and equitable rights may be pleaded, and relief at law and in equity may be granted, in the same action. [Citations]."

The following is taken from Addy v. Stewart, 69 Idaho 357, at page 362, 207 P.2d 498, at page 501:

"In this state distinctions between actions at law and suits in equity, and the forms of actions and suits, are prohibited. Const. Art. 5, Sec. 1. Pleadings are liberally construed. I.C. 5-801. Fox v. Cosgriff, 64 Idaho 448, 133 P.2d 930. A statement of cause in ordinary and concise language is all that is required. I.C. 5-605. Relief will be granted in any case where the pleading and proof entitle the plaintiff to any relief whether legal or equitable. [Citations]."

Defendants' assignment that the court erred in finding them guilty of contempt, raises the question of the sufficiency of the evidence to sustain defendants' contention that they are entitled to the irrigation water which they used, by virtue of their alleged right prior and superior to plaintiffs' rights, and whether they used waters to which they were not entitled in willful violation of the restraining order.

Defendants' position interpreted in the light of the record is, that they allege a prescriptive right to the use of 35 miner's inches of the waters of Gooseberry creek and its tributaries, applied to a beneficial use for more than five years prior to the commencement of this action, by reason of plaintiffs' abandonment of the use of 35 miner's inches of the decreed waters of Gooseberry creek and their failure to apply the same to a beneficial use.

On the other hand, defendants by their answer to the amended and supplemental complaint admit the entry of the decree in the case of Hillman v. Hardwick, supra, upon remittitur, whereby the district court awarded Ira King Hillman the right to the use of 125 miner's inches of the waters of Gooseberry creek and its tributaries; and defendants introduced in evidence all the files in the case of Hillman v. Hardwick, including such decree; also by their further exhibits, the abstracts of title to the lands of plaintiffs, defendants show that plaintiffs are direct successors in interest of the land of Ira King Hillman, their father; also that such land is beneficially encumbered by the contract of plaintiffs of March 8, 1945, recorded June 23, 1945, in

the office of the recorder of Bannock County, whereby they, the plaintiffs, contract, as covenants running with their land, their equal ownerships in the 125 miner's inches of water decreed, in the case of Hillman v. Hardwick, to their lands through their father, predecessor in interest.

It is noted that defendants did not produce any witness to refute plaintiffs' witnesses; nor did they introduce evidence in support of their answer and cross-complaint. The record as thus presented will be briefly summarized

A civil engineer testified that approximately 106 acres of plaintiffs' land was under irrigation through Upper Hillman Ditch and approximately 111 acres through the Lower Hillman Ditch; that, although plaintiffs rotated the water, all of such land was not irrigated every year because of insufficiency of the supply of water. The engineer also testified that the land, being arid in character, requires a minimum of one miner's inch per acre.

Plaintiff Pearl Hillman Nordick, 71 years of age, was born on her father's property, and lived there all her life except the 20 years, 1905 to 1925; during those 20 years she frequently visited the home place. She was well acquainted with the entire property and helped her father frequently on the farm, including its irrigation. Her husband operated the land since 1926. They never had water difficulties with any of Sorensens' predecessors. Her father died in August 1944. Not long thereafter (the record shows about 1947), the defendants, as successors of one Denny, became the owners of land above and to the west of the Hillman land. Thereafter and particularly commencing the year 1951 defendants persistently took the waters of Gooseberry creek. In 1951 they diverted all of its waters; when she and her husband turned the water back into the creek, defendant Douglas Sorensen turned it back upon the Sorensen land.

Plaintiffs then commenced this action in June 1951, and June 27, 1951, obtained the restraining order directed against defendants.

Plaintiff Mrs. Nordick further testified of the various, frequent occasions during each year after 1951 that she, her sister, and their respective husbands turned the water down Gooseberry creek, only to have it turned back by defendant Douglas Sorensen, onto the Sorensen lands; also that she consulted with defendant Chris Sorensen about the matter but that Chris also claimed the water; that by reason of such acts, but little water of Gooseberry creek became available through the Upper Hillman Ditch for irrigation of plaintiffs' lands, except for 3 weeks during the irrigation season of 1956.

The testimony of the various witnesses shows that during irrigation seasons the

flow of Gooseberry creek and its tributaries never exceeds 80 to 100 miner's inches and upon occasions in 1953, it did not exceed 65 to 70 miner's inches.

Plaintiff Mabel Hillman Quayle corroborated the testimony of her sister, Mrs. Nordick, concerning defendants' use of the waters of Gooseberry creek. Her testimony is to the further effect that in 1950, when defendants commenced taking the waters of Gooseberry creek, she and her husband warned defendant Chris Sorensen about taking the water and Chris replied, "it is worth a try to get it," and that defendants continued taking a part of plaintiffs' water; also that during June of 1956 when she and her sister, Mrs. Nordick, turned the water back into Gooseberry creek defendants had been taking approximately one-half of the flow of the stream which left plaintiffs about 35 miner's inches flowing through their measuring box.

The testimony of Albert Nordick and Joseph Quayle, husbands respectively of plaintiffs, is to like effect concerning defendants' taking the waters of Gooseberry creek regardless of their objections.

The record further shows that upon one occasion during May 1954 defendant Douglas Sorensen injured Joseph Quayle, by striking him across his face and head, while he was turning the diverted waters back into Gooseberry creek.

A short time thereafter when Quayle again turned the water back into Gooseberry creek from Sorensens' land by cutting all of Sorensens' dams, Chris Sorensen told Quayle he had no right to cut their, Sorensens', dams; but, although Quayle told him to leave the water alone, nevertheless defendants continued to take the water.

Mr. Quayle additionally testified that the water troubles with defendants commenced during 1949, and that defendant Chris Sorensen, to whom he talked upon one occasion, claimed the water.

The testimony referred to clearly negates defendants' alleged entitlement to a prescriptive right to the use of 35 miner's inches of the waters of Gooseberry creek and its tributaries based upon alleged abandonment thereof by plaintiffs, or their failure to apply it to a beneficial use. The evidence, at most, shows defendants' use of plaintiffs' decreed waters at times during the years 1950 and 1951 when plaintiffs needed said waters for irrigation, which in no event constituted the requisite five years of adverse use.

Defendants assign error of the trial court in finding and decreeing that plaintiffs have a prior right as against defendants to the waters of certain springs arising upon their land; defendants thereby raise the question of the insufficiency of the evidence to sustain such finding.

Those springs arise in and upon the Northwest Quarter of the Northwest Quarter of the Southwest Quarter of Section 17, Township 13 South, Range 38 East of the Boise Meridian, owned by defendants. The springs are near defendants' granary and are situate above and to the immediate north of the Upper Hillman Ditch, and some 1,100 feet north of the channel of Gooseberry creek. The springs flow from three to five miner's inches of water and have been used by defendants and by their predecessors to irrigate a "garden spot" of some 5 acres.

Defendants contend that since those springs are located wholly upon, are appurtenant to and a part of, the land, the use of the waters thereof belong exclusively to defendants as owners of the land. Defendants urge that the evidence fails to show that the waters from the springs flowed into the natural channel of Gooseberry creek as tributary thereto, thereby to become public waters subject to appropriation.

This rule is sanctioned by the statute, I.C. § 42–212, which prohibits the department of reclamation from granting a permit to divert or appropriate the waters of any spring situate entirely upon the lands of an owner, excepting to the owner or with the owner's written acknowledged permission. It is only when the waters of natural springs flow off privately owned lands into a natural channel that such waters when flowing in the natural channel become public waters subject to appropriation, diversion and application to a beneficial use. I.C. §§ 42–101, 42–103. Jones v. McIntire, 60 Idaho 338, 91 P.2d 373, 379, contains a succinct statement of the law applicable to such a situation, as follows:

"While the rule prevails that lakes of a surface area of less than 5 acres and pools and springs, located *wholly* upon and within the lands of a person or corporation, are appurtenant to and a part of the lands and belong exclusively to the owners of the land [citations], it is also well settled that the waters of natural springs, which form a natural stream or streams flowing off the premises on which they arise, are public waters subject to acquirement by appropriation, diversion and application to a beneficial use."

The situation here is similar to that presented in Maher v. Gentry, 67 Idaho 559, 186 P.2d 870, 872; therein the evidence showed that "The water from the springs on appellant's land and from the spring on respondent's land sinks into the soil and none of the waters therefrom flows off the premises upon which the same rises"; which constituted those waters "private waters" within the purview of I.C. § 42–212. See also Rabido v. Furey, 33 Idaho 56, 190 P. 73; Short v. Praisewater, 35

**130**

Idaho 691, 208 P. 844; Bachman v. Reynolds Irr. Dist., 56 Idaho 507, 55 P.2d 1314.

We have examined the record of Hillman v. Hardwick, 3 Idaho 255, 28 P. 438, introduced in evidence herein. That record makes no mention of these springs.

The record herein, relating to the springs, shows as follows:

Mr. Hayes, the engineer, testified that he saw the springs during the years 1951 and 1953; that the waters thereof were diverted onto Sorensens' garden and that surplus water ran into Upper Hillman Ditch. He expressed the opinion that "if it [the water] got across to the southeast down through Sorensens' pasture it would eventually find its way to Gooseberry creek, either surface flow or ground water flow." Mr. Hayes' testimony thus fails to show in the first instance whether the water, under any circumstance, could get across Sorensens' pasture.

Mr. Joseph Kay on direct examination stated that the springs caused a swampy condition on the Sorensen place. On cross-examination he testified:

"Q. Did you notice whether there were any more springs than the one near the barn in the Sorensen property? A. Well, there is one spring, no nothing in connection with the Gooseberry at all."

Mr. Vern Kay on direct examination testified:

"Q. Now have you ever seen the spring on Sorensen property? A. I have.

"Q. And where does that water flow? A. Well, it spreads out over the ground; it is spread out over the ground made it kinda swampy and I think it went back in the creek [meaning Gooseberry creek]."

Plaintiffs' counsel developed by Mr. Kay that on April 3, 1957, when asked what was being done with the water at that time: "Well, it was just sinking." Mr. Kay further stated that Sorensen's predecessors irrigated upwards to four acres below the Sorensens' barn, his testimony indicating, with the water of those springs.

Mr. Quayle testified concerning a spring on the Sorensens' land which flowed about three inches of water which, "if unmolested runs into the Upper Hillman Ditch, now." On cross-examination he stated that he knew about the springs on Sorensens' place and his testimony then appears:

"Q. And they flow into Gooseberry creek? A. They used to.

"Q. Do they now? A. No, sir.

"Q. When did they flow in there? A. When I was first there, * * * about 1917.

"Q. When did they first flow into Gooseberry creek? A. Well, there was a culvert, there used to be an old

wooden culvert that crossed the road there; the evidence showed that they had seeped into Gooseberry creek but I couldn't say after that what length of time, but they used to flow directly into the Upper Hillman ditch.

"Q. When did they cease flowing into the Upper Hillman ditch? A. When Sorensens began to use them. * * * to my recollection when they came there in about 1947."

Mr. Quayle's cross-examination then shows:

"Q. Do they [the springs] issue much water therefrom? A. No, sir.

"Q. They run into the creek, do they? A. No, they don't run into the creek; they will sink into the ground right around there, and they eventually furnish run-off water into the creek.

"Q. How do you know? A. I don't know that they would run any other place.

"Q. Just a conclusion? A. Yes, sir, it has to be."

His testimony then appears:

"Q. Then a flume that was placed at the diversion of the Upper Hillman ditch would it take into consideration water from those springs, would it? A. No sir.

"Q. And whatever water reached the Upper Hillman ditch then *below*

*that measuring point* that would *augment* the *stream just that much,* would it not? (Emphasis supplied.) A. Yes, sir."

Plaintiffs developed J. W. Hillman's knowledge of a 1926 contempt proceeding prosecuted against Sorensens' predecessor, one J. W. Brown, because of his taking water decreed to the lands now owned by plaintiffs. Mr. Hillman stated that Brown took water from the Upper Hillman Ditch, also that the springs situate upon the Sorensen place, then running about four miner's inches of water were involved in the litigation; that Brown took the water by placing dams in the Upper Hillman Ditch and that thereby he used some 40 miner's inches of water. He then stated that "the water from those springs would reach the Upper Hillman ditch if unmolested." The court, at the conclusion of the proceeding, adjudged Brown guilty of contempt for using the waters of Gooseberry creek and its tributaries "at a time when there was less than enough water in the stream to supply Hillman's decreed right."

We have concluded from close scrutiny of all the records before us that there is no evidence beyond mere conjecture that the waters of those springs formed a natural stream flowing into the natural channel of Gooseberry creek. There is no factual evidence indicating that the water ever passed beyond the Sorensen place. The evidence

at the most shows that the water from the springs, if unmolested or not interfered with by the man-made Upper Hillman Ditch, originally spread out upon the land rendering it somewhat swampy, and that if any waters of those springs found their way into the natural channel of Gooseberry creek it was by way of underground seepage.

The evidence also establishes that any waters of those springs flowing into the Upper Hillman Ditch are not measured, and have never been accounted for as a charge against the Hillman decreed prior right to the use of 125 miner's inches of the waters of Gooseberry creek and its tributaries.

■ We therefore conclude that the finding of the court, that the waters of those springs are tributary to Gooseberry creek, is erroneous, because resting only upon an inference or conjecture, and not upon the established fact, that the waters of those springs reached Gooseberry creek except perhaps as seepage in an unestablished measure; or that those waters ever formed a natural stream flowing off the land where they were situate, into the natural channel of Gooseberry creek. The rule is applicable here that an inference resting upon an inference is not proof, and that the burden of proof cannot be so sustained. Hargis v. Paulsen, 30 Idaho 571, 166 P. 264; Holt v. Spokane & P. Ry. Co., 4

Idaho 443, 40 P. 56; McMaster v. Warner, 44 Idaho 544, 258 P. 547; Marra v. Jones Store Co., Mo.App., 170 S.W.2d 441; 31 C.J.S. Evidence § 116, p. 728.

■ The testimony also clearly shows a course of willful and persistent violation, on the part of both defendants, of the district court's restraining order of June 27, 1951; by virtue thereof, factually, the district court was justified in adjudging defendants and each of them in contempt of its order. I.C. §§ 7–601 and 7–610.

Defendants also assert that the court erred in finding and decreeing the flow of Chicken creek, a tributary of Gooseberry creek, to be at 1½ miner's inches, and as so contributing to plaintiffs' decreed rights in Gooseberry creek and its tributaries. Defendants assert the evidence shows the contribution of Chicken creek to be in much greater amount.

The evidence shows that the flow of Chicken creek at times exceeds 1½ miner's inches and that sometimes it is less. A civil engineer testified that he found its flow to be two miner's inches upon an occasion that he measured it, and upon another occasion six miner's inches. Mr Quayle found five miner's inches when he measured its flow during May 1954; and further testified that the flow decreased in May and continued to decrease down to nothing. Mr. Hillman testified

that during early season the flow was six or seven inches but that in the summer the creek dries up entirely.

The record amply supports the finding of the trial court that the flow of Chicken creek contributes 1½ miner's inches as a fair average to the decreed rights of plaintiffs in Gooseberry creek and its tributaries.

Defendants assert that the trial court committed error in finding and decreeing as to points of diversion and measurements.

This Court in Hillman v. Hardwick, 3 Idaho 255, 28 P. 438, found that Ira King Hillman and his grantors in 1872 and 1873 constructed two ditches for the purpose of utilizing the waters of Gooseberry creek in the irrigation of their land, one ditch taking water from the south, and the other from the north, of the creek; also, that the ditches were of sufficient capacity to carry the waters of the creek and had been so used by Hillman and his grantors for the irrigation of said land.

In the case at bar those two points of diversion were definitely established as the Upper Hillman Ditch and the Lower Hillman Ditch and that those ditches and their points of diversion exactly coincided with the two ditches and their points of diversion as the same existed when the decree was entered in Hillman v. Hardwick, supra.

Chicken creek, a tributary of Gooseberry creek, may be considered a point of diversion since its waters were diverted by Hillman and used to irrigate a small tract. The trial court decreed that plaintiffs' 125 miner's inches of water should be charged with 1½ inches of water of Chicken creek, but provided that defendants may place a measuring device therein if they desire.

The trial court thus fixed three points of diversion and fixed the measurements thereat, viz., 123½ miner's inches at the Upper Hillman and Lower Hillman diversions, and 1½ inches at the Chicken creek confluence with Gooseberry creek. Defendants' objections are not directed at those three points of diversion; rather they argue that plaintiffs diverted waters from additional points down stream from the Upper Hillman, without measurement of the water so taken.

The evidence adduced by plaintiffs (and no witness was produced by defendants) indicates that sometimes the water is turned down Gooseberry creek below Lower Hillman Ditch, when not diverted therein, in which event the channel of the creek becomes the carrying ditch, and the water so conveyed is turned on the land at various places by manure dams.

The evidence also shows that there are no springs running into the channel of Gooseberry creek below the Lower

**134**

Hillman Ditch, the second point of diversion, except one small spring of inconsequential flow. J. W. Hillman testified relating to its flow:

"* * * if you dig a hole down there and haul two buckets, you can fill one up with water; you would have to wait a bit to get another bucket of water."

The civil engineer testified:

"If you measure the water at the confluence of South Fork (where the measuring device is now located), you would measure all the water that was taken out below at the various manure dams, because it would be the same water."

The referred to evidence is undisputed. Clearly it is sufficient to support the finding and decree of the trial court.

 Defendants assert error of the trial court in finding that plaintiffs and their predecessors used all the waters of Gooseberry creek during each and every irrigation season.

J. W. Hillman testified that his father, Ira King Hillman, had under irrigation about 200 acres, all of which he could not irrigate each year from Gooseberry creek because of insufficient water. His father irrigated about 150 acres each year from the creek. Plaintiffs testified that ever since they became the owners of the land they have used the waters of Gooseberry creek to irrigate some 160 to 200 acres thereof by a system of rotation of the water, except during the times defendants interfered with plaintiffs' use of their decreed water. This evidence likewise is undisputed and sufficient to support the trial court's finding.

Defendants assign error of the trial court in finding that plaintiffs' land requires one miner's inch of water per acre over and above transportation losses for the proper irrigation thereof.

Defendants in their answer admitted that the land was arid in character and required irrigation for the growing of crops thereon.

 The civil engineer testified that there is approximately 217 acres of plaintiffs' lands capable of being irrigated by waters from Gooseberry creek but that all of such land is not irrigated each year because of insufficiency of the water supply; a part is irrigated one season and a part another season. He then was asked:

"Q. What is the duty of water * * * upon those lands? A. It would be one inch to the acre. Actually, I would say if they had 1½ inches to the acre they would be in pretty good shape."

This evidence likewise is undisputed.

I.C. § 42–220 provides in part:

"* * * when water is used for irrigation, no * * * decree of the court allotting such water shall be issued confirming the right to the use of more than one second foot of water for each fifty acres of land so irrigated, unless it can be shown to the satisfaction of * * * the court in making such decree, that a greater amount is necessary, * * *."

There is no merit in said assignment. Noteworthy, the decree in the case of Hillman v. Hardwick, supra, fixed the water right at 125 miner's inches measured at the points of diversion fixed at two ditches mentioned in the decree. The action here is for a redetermination of that water right of 125 miner's inches, again measured at the points of diversion fixed at the two ditches—Upper and Lower Hillman—and a small quantity measured at Chicken creek. The trial court's finding will be so construed.

Defendants assert error of the trial court in awarding $1,000 damages in favor of each plaintiff against defendants.

The record shows that Mr. Nordick and Mr. Quayle, husbands of plaintiffs, respectively, were experienced as farmers and were in charge of plaintiffs' farming operations. Each testified concerning estimated losses of crops because of lack of irrigation water caused by defendants' acts in depriving plaintiffs thereof. Their testimony is in terms of acreage planted to crops and tonnage produced with irrigation water, less both the actual crops produced and costs of producing, harvesting, and in certain instances, of marketing the net estimated crops. The damage thus proved (excluding any amount testified to as pasture loss assertedly reflected in loss on returns from milk checks) considerably exceeds the amount of damages as found and decreed by the trial court. The court's findings as to the damages will be sustained.

Where the findings of the trial court are supported by substantial evidence they will not be disturbed on appeal. I.C. § 13–219; Koser v. Bohemian Breweries, 69 Idaho 33, 202 P.2d 398; Anselmo v. Beardmore, 70 Idaho 392, 219 P.2d 946; Edgeller v. Johnston, 74 Idaho 359, 262 P.2d 1006; Jordan v. Yoder, 77 Idaho 479, 295 P.2d 271; In re Davenports' Estates, 79 Idaho 548, 323 P.2d 611.

The restraining order or injunction pendente lite of June 27, 1951, recites: "This injunction is pendente lite." It became functus officio upon termination of the action by entry of the final judgment and decree. Hence, the contempt judgment is void insofar as it attempts to subject defendants to the pen-

alty of the injunction pendente lite, as of times in the future from and after October 11, 1957, the date of entry of final judgment and decree.

The judgment and decree of the district court, being void in the respects hereinbefore mentioned, all of the penalty thereof, excepting $500 and five days imprisonment as to each defendant, and the provisions thereof attempting to render defendants amenable to the terms of the injunction pendente lite from and after October 11, 1957, the time of entry of the final judgment and decree of the district court, are stricken therefrom.

The portion of the decree, adjudging the springs situate in and upon Sorensens' land, i. e., in and upon the Northwest Quarter of the Northwest Quarter of the Southwest Quarter of Section 17, Township 13 South, Range 38 East of the Boise Meridian, to be tributary to Gooseberry creek, and awarding the prior right to the use of the waters of those springs as part and parcel of plaintiffs' prior decreed right to the use of 125 miner's inches of waters of Gooseberry creek and its tributaries, is vacated; and the district court is directed to decree the right to the use of the waters of said springs to the defendants.

The judgment and decree as so modified is affirmed.

Costs are awarded to respondents pursuant to the majority view of the Court.

Petition for rehearing denied.

PORTER, C. J., and TAYLOR, J., concur.

Former Chief Justice KEETON and District Judge BAKER before retirement concurred in the opinion, but retired from office prior to modification of the opinion on petition for rehearing.