785 P.2d 660

**Walter L. BAYES,**
**Appellant–Appellant on Appeal,**

v.

**STATE of Idaho,**
**Respondent–Respondent**
**on Appeal.**

**Nos. 17493–17495.**

Court of Appeals of Idaho.

Oct. 31, 1989.

Petition for Review Denied Jan. 24, 1990.

Walter L. Bayes, Homedale, pro se.

Jim Jones, Atty. Gen., Elaine F. Eberhar-ter–Maki, Deputy Atty. Gen., Boise, for respondent-respondent. Ms. Eberharter–Maki argued.

Before WALTERS, C.J., SWANSTROM, J., and BENGTSON, J., Pro Tem.

PER CURIAM.

This appeal involves the review of a magistrate's order finding the appellant, Walter Bayes, in contempt of court and directing that Bayes serve three days in jail. The magistrate's order was upheld on an inter-mediate appeal to the district court. Bayes does not assert any error relating solely to the district court's intermediate appellate review; accordingly, we will limit our consideration only to the issues raised by Bayes that were also presented to, and decided by, the district court. *See Gordon v. Noble,* 109 Idaho 1048, 712 P.2d 749 (Ct.App.1986); *Centers v. Yehezkely,* 109 Idaho 216, 706 P.2d 105 (Ct.App.1985). Those issues are whether Bayes was entitled to a jury trial in the contempt proceeding; whether Bayes may collaterally attack the validity of the underlying orders that gave rise to the contempt proceeding; and whether Idaho's compulsory education statute is unconstitutional because of vagueness. After due consideration, we conclude that the district court's decision sufficiently and correctly disposes of Bayes' challenges to the magistrate's action. With slight modifications, we adopt and incorporate the district court's decision as our opinion in this case, upholding the magistrate's contempt order.

The background to this case is as follows. Walter and Virginia Bayes refused to send three of their children to public schools in the Wilder School District, preferring to educate the children at home for religious reasons. The board of trustees of the district (Board), deeming the children to be habitual truants, referred the matter to the Canyon County Prosecuting Attorney. The prosecutor filed with the magistrate division petitions under the Youth Rehabilitation Act (YRA), alleging that the children had violated the Board's attendance regulations by failing or refusing to attend school during the 1985–86 school year. The petitions also alleged that Mr. and Mrs. Bayes had caused the children to become habitual truants by violating I.C. §§ 33–202, 33–206 and 33–207.

Pleas of "not true" were entered by a magistrate for each of the children and an evidentiary hearing was set. After argument on several preliminary motions and before the evidentiary hearing commenced, the children's attorney, the deputy prosecutor, Mr. Bayes, the then-superintendent of the school district, and a representative of

the Department of Education met with the court in chambers and reached an agreement for disposition of the matter. The resultant agreement was put on the record, with certain points being discussed and clarified. Upon the court's inquiry: "And the Bayes, that is the parents on behalf of the children, do accept this agreement and agree to abide by it?", Mr. Bayes replied, "I guess we do...." After further discussion and clarification, the magistrate orally accepted the agreement, ordered it implemented, and ordered the parties to obey and abide by it. The judge then cautioned: "And unless either party breaches its agreement, and only in that case, will either party initiate other judicial proceedings for such violation *or seek court sanctions, such as contempt, for violation of the order.*" (Emphasis added.) The hearing then concluded with the children's attorney advising the court that there was nothing further to be presented.

The parties' agreement was reduced to writing and entered by the court as an order. Subsequently, certain minor changes requested by Mr. Bayes in a letter to the court were implemented by an amended order. Under these orders, Mr. and Mrs. Bayes were to have total control over the facilities and materials used to educate their children. So that the children's progress would be monitored, the Iowa Test of Basic Skills (test) was to be administered to the children in October and April of each school year, simultaneously with administration of the same test to the students enrolled in the district's schools.

The test apparently was given to the Bayes children in April, 1986 and in October, 1986. However, in April, 1987, Mr. Bayes refused to allow testing of the children. This refusal precipitated the issuance of an order to show cause why Mr. Bayes should not be held in contempt for refusing to comply with the court's order that the children be tested in April of each year. After an evidentiary hearing, Mr. Bayes was found to be in contempt of the order and was sentenced to three days in the county jail. The sentence was stayed pending appeal.

I

■ On appeal Bayes raises several issues. Most of those issues are attacks on the underlying orders of which he was found to be in contempt. The only issue directly going to the validity of the contempt order is whether Bayes improperly was denied a jury trial on the contempt accusation. We turn first to that issue.

Although the penalty for a contempt consisting of disobedience of a court order is a possible fine or jail sentence, the constitutional guarantees to a jury trial found in art. 1, § 7, of the Idaho Constitution are not automatically applicable. *See McDougall v. Sheridan*, 23 Idaho 191, 128 P. 954 (1913); *Dutton v. District Court*, 95 Idaho 720, 518 P.2d 1182 (1974). *McDougall* and *Dutton* both cite *In re Debs*, 158 U.S. 564, 15 S.Ct. 900, 39 L.Ed. 1092 (1895), wherein the United States Supreme Court explained:

> Nor is there in this any invasion of the constitutional right of trial by jury.... But the power of a court to make an order carries with it the equal power to punish for a disobedience of that order, and the inquiry as to the question of disobedience has been, from time immemorial, the special function of the court. And this is no technical rule. In order that a court may compel obedience to its orders, it must have the right to inquire whether there has been any disobedience thereof. To submit the question of disobedience to another tribunal, be it a jury or another court, would operate to deprive the proceedings of half its efficiency.

*Debs, supra*, 158 U.S. at 594–95, 15 S.Ct. at 910, 39 L.Ed. at 1106. In *Dutton*, our Supreme Court recognized that the rule announced in *Debs* was subsequently modified in *Bloom v. Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), requiring a distinction to be made between serious and petty contempts. The Court said: "In a serious contempt, or one punishable as a felony, there is a right to a trial by jury guaranteed by the Due Process Clause of the Fourteenth Amendment. In a petty

contempt, or one punishable as a misdemeanor, there is no right to a trial by jury." 95 Idaho at 724, 518 P.2d at 1186. The Court determined that because Dutton's wilful disobedience of the district court's order constituted a misdemeanor a jury trial was not required, citing *McDougall*.[1] Applying that same analysis to this case, we conclude that Bayes was not entitled to a trial by jury.[2]

## II

■ Bayes' other attacks on the contempt order are collateral in nature, based as they are on the validity of the underlying orders. Such attacks will not prevail on appeal. In a recent opinion, *In re Contempt of Reeves*, 112 Idaho 574, 733 P.2d 795 (Ct.App.1987), this Court said:

Contempt orders frequently result from the refusal of the contemnor to obey the express order of a court.... [T]he contemnor may challenge the procedure by which the contempt is adjudicated. He may argue that there is no substantial evidence to support the finding that he knowingly violated a court order. He may even challenge the penalties imposed. However, he may not knowingly ignore an order of the court, even though he believes it to be incorrect, and then contest the validity of the underlying order on appeal from a finding of criminal contempt. [Citations omitted.] This rule is based upon sound foundations of public policy. A trial court may make numerous rulings and issue a substantial number of orders during the course of a law suit. If a party were free to disobey any order with which he or she disagreed, the entire judicial process would break down. As the United States Supreme Court explained in *Maness v. Meyers*, 419 U.S. 449, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975):

We begin with the basic proposition that all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but absent a stay, to comply with the order pending appeal. Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect.... Such orders must be complied with promptly and completely, for the alternative would be to frustrate and disrupt the progress of the trial with issues collateral to the central questions in litigation. This does not mean, of course, that every ruling by a presiding judge must be accepted in silence. Counsel may object to a ruling. An objection alerts opposing counsel and the court to an issue so that the former may respond and the latter may be fully advised before ruling. [Citations omitted.] But, once the court has ruled, counsel and others involved in the ac-

---

1. The United States Supreme Court in *Bloom* noted that the goals relating to effective functioning of the courts—dispatch, economy, and efficiency—"are amply served by preserving the power to commit for civil contempt and by recognizing that many contempts are not serious crimes but [are] petty offenses not within the jury trial provisions of the Constitution." 391 U.S. at 209, 88 S.Ct. at 1486, 20 L.Ed.2d at 533.

2. In *State v. Bennion*, 112 Idaho 32, .730 P.2d 952 (1986), our Supreme Court stated that the Idaho Constitution, art. 1, § 7, "provides for trial by jury for all public offenses which are potentially punishable by imprisonment." 112 Idaho at 45, 730 P.2d at 965. However, the Court noted that its decision in *McDougall v. Sheridan*, 23 Idaho 191, 128 P. 954 (1913) "carved out a narrow exception [to the jury trial requirement] to allow courts 'to punish sum-

marily for contempt.'" 112 Idaho at 35, 730 P.2d at 955. The Court in *Bennion* concluded that, "[w]hen viewed from the perspective of the potential punishment involved, the right to jury trial at the time of statehood extended primarily to offenses potentially punishable by imprisonment, *excepting contempt*." [Emphasis supplied.] 112 Idaho at 43, 730 P.2d at 963.

It appears that, if a contempt is prosecuted by the state as a separate, criminal action under I.C. § 18–1801, then under *Bennion* a jury trial would be required. However, if the contempt citation were pursued summarily by motion in the course of an existing action (*e.g., Nordick v. Sorensen*, 81 Idaho 117, 125, 338 P.2d 766, 771 (1959), regardless of whether the underlying action is a criminal or civil one, *see* I.C. §§ 7–601, 610) as in this case and as in *Dutton*, then under the *McDougall* exception a jury trial is not mandated.

tion must abide by the ruling and comply with the court's orders.... Remedies for judicial error may be cumbersome but the inquiry flowing from an error generally is not irreparable, and orderly processes are imperative to the operation of the adversary system of justice.

419 U.S. at 458–60, 95 S.Ct. at 591–92. *See also Walker v. City of Birmingham,* 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967); *Howat v. Kansas,* 258 U.S. 181, 42 S.Ct. 277, 66 L.Ed. 550 (1922). This rule applies even where the order later is found to have infringed upon constitutional rights or to be based upon an unconstitutional statute. [Citations omitted.] Only in the case where an order was "transparently invalid or had only a frivolous pretense to validity" will a criminal contempt finding be reversed. [Citations omitted.] We believe that this is a heavy burden to meet, and that an individual who disobeys an order of the court acts at his peril. Unless he can convince the appellate court that the order was so clearly invalid that no reasonable man could believe otherwise, a criminal contempt order will be upheld. We further consider it incumbent upon the individual to bring the error to the attention of the court before undertaking to disobey the order. [Citations omitted.]

*Reeves, supra,* 112 Idaho at 579–80, 733 P.2d at 800–01.

In the instant case, Bayes contends the underlying orders did not reflect the entire agreement of the parties. He claims to have understood that if he chose not to comply with the orders, the proceeding would be returned to the status quo and the parties would continue with an evidentiary hearing on the YRA petitions. This argument is not well founded, for it flies in the face of the record. The parties' agreement as to the testing times and procedures was clearly stated on the record. Neither Bayes nor the children's attorney raised any objection to that portion of the agreement either at the hearing or afterward—until the contempt hearing. Nor was any question or objection raised in response either to the court's ordering the

parties to "obey and abide by" the order or to the court's admonition relating to invocation of "sanctions, such as contempt, for violation of the order."

Bayes admitted at the contempt hearing that he was aware of the terms of the agreement, as stated in the record, and that he sought certain modifications by amendment of the original order. His requested modifications did not include an amendment permitting his conditional compliance with the order.

Bayes' disobedience of the order appears to be a manifestation of his misperception of the status of his children in the court system. Evidently, Bayes has arrived at the erroneous conclusion that the children have been stigmatized by being within the court's jurisdiction under the YRA. He argued to the magistrate that unless the children, after an evidentiary hearing on the YRA petitions, are adjudicated "innocent" of any criminal offenses they are branded "juvenile delinquents."

While we do not doubt the sincerity of Bayes' belief, it is an untenable position when considered in the context of *pari materia* application of the compulsory education statutes and the YRA. The pertinent sections of the Idaho Code read as follows:

33–202. School attendance compulsory. —The parent or guardian of any child resident in this state who has attained the age of seven (7) years at the time of the commencement of school in his district, but not the age of sixteen (16) years, shall cause the child to be instructed in subjects commonly and usually taught in the public schools of the state of Idaho. Unless the child is otherwise comparably instructed, as may be determined by the board of trustees of the school district in which the child resides, the parent or guardian shall cause the child to attend a public, private or parochial school during a period in each year equal to that in which the public schools are in session; there to conform to the attendance policies and regulations established by the board of trustees, or

other governing body, operating the school attended.

33–206. Habitual truant defined.—An habitual truant is any ... child whose parents or guardians, or any of them, have failed or refused to cause such child to be instructed as provided in section 33–202.

Whenever it shall come to the attention of the board of trustees of any school district that the parents or guardians of any child are failing to meet the requirements of section 33–202, a petition shall be filed with the [magistrate] court of the county in which the child resides, as provided in section 33–205.

The latter referenced section, 33–205, is pertinent to the extent that it provides in part for the filing of a petition "in such form as the court may require under the provisions of section 16–1807, Idaho Code" (a section of the YRA).

Continuing with the relevant statutes, § 33–207 provides as follows:

Proceedings against parents or guardians.—Whenever it has been determined by the [magistrate] court of any county that the parents or guardians of any child between the ages of seven (7), as qualified in section 33–202, and sixteen (16), are failing, neglecting or refusing to place the child in school as provided in this chapter or to have the child comparably instructed, or knowingly have allowed a pupil to become an habitual truant, proceedings shall be brought against such parent or guardian under the provisions of the youth rehabilitation law.

Finally, under § 16–1801 of the Idaho YRA: "The policy of the state of Idaho is hereby declared to be the establishment of legal frame work conducive to the constructive judicial processing of children's cases where the child's conduct is in conflict with the law; ..."

Construing all of these statutes together, it is obvious that the legislative scheme—providing that a petition for the initial determination of whether a child is being adequately educated will be filed pursuant to the YRA—is to ensure that such deter-mination is made by a court of competent jurisdiction without the stigma of criminal proceedings attaching. Even more obvious is society's objective, as expressed by the legislature in the enactment of the compulsory education statutes and the YRA, to have Idaho's children educated so that they may be productive citizens not disadvantaged by lack of education adequate to meet the demands of modern life. The goal is not to label children "juvenile delinquents" by bringing them before the courts, but to achieve society's objective by positive and orderly resolution of the parties' differences within an impartial legal framework.

Having arrived at such resolution, however reluctantly, a party subject thereto who then disregards his obligation to abide by his agreement acts within the risk of severe sanctions. In this case no stigma has attached to the Bayes children by reason of having been brought to the attention of the court. The logical course of action for the Bayes family to have pursued would be compliance with the court's orders, thereby achieving the common goal of comparable education of the children without the imposition of penalties on anyone.

### III

■ Finally, Bayes challenges the magistrate's decision upholding the constitutionality of I.C. § 33–202. In the proceedings below, Bayes contended that the statute was vague, was therefore unconstitutional and must be treated as void for that reason. Referring to the statute, Bayes asserts that: "If two reasonably intelligent people were to read it, they would come up with different ideas for home schools." Bayes' argument relates to the following language from the statute (quoted in full above):

The parent ... of any [school-age] child resident in this state ... shall cause the child to be instructed in subjects commonly and usually taught in the public schools of the state of Idaho. Unless the child is otherwise comparably instructed, as may be determined by the board of trustees of the school district in which

the child resides, the parent or guardian shall cause the child to attend a public, private or parochial school during a period in each year equal to that in which the public schools are in session; there to conform to the attendance policies and regulations established by the board of trustees, or other governing body, operating the school attended.

Essentially, Bayes takes the position that the phrase "comparably instructed" is so facially vague as to preclude a common sense understanding of it by an ordinary person. He cites *Ellis v. O'Hara*, 612 F.Supp. 379, 380 (D.C.Mo.1985) for the proposition that:

> A statute is unconstitutionally vague when it commands or proscribes conduct in terms so vague that persons "of common intelligence must necessarily guess at its meaning and differ as to its application." [Citations omitted.] The vagueness doctrine also applies to statutes which lack normal guidelines for their enforcement. [Citations omitted.] The absence of sufficient guidelines allows law enforcement officials, prosecutors and judges to "pursue their personal predilections." [Citations omitted.]

However, "the mere fact that there may be a difference of opinion as to the meaning of language used in a statute does not render it too vague or uncertain to be unenforceable." *State v. Groseclose*, 67 Idaho 71, 75, 171 P.2d 863, 864 (1946). In *Groseclose* the Idaho Supreme Court noted the following rules of construction applicable to the vagueness doctrine:

> A statute cannot be held void for uncertainty if any reasonable and practical construction can be given to its language.... If the terms of the statute are by fair and reasonable interpretation capable of a meaning consistent with the requirements of the Constitution, the statute will be given that meaning, rather than another in conflict with the Constitution.
>
> A doubt as to the constitutionality of an act should be resolved in its favor, and to declare it unconstitutional it must clearly appear to be so. It is the duty of

the court to adopt such construction as will sustain the statute, if its language will permit. Where an act is fairly susceptible of two constructions, one of which will uphold its validity, while the other will render it unconstitutional, the former should be adopted.

．　　．　　．　　．　　．

> The rule of interpretation to be followed is that the question is one of legislative intent, and the courts will look to the language of the statute, the subject matter of it, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment; and if from all these it is manifest that it was not intended to imply a prohibition or to render the prohibited act void, the courts will so hold and will construe the statute accordingly.
>
> In construing a statute, it is the duty of the court to consider the reason for the law, its object, and purpose as to ascertain and render effective the legislative intent.

*Id.*, 67 Idaho at 75, 171 P.2d at 865 [citations and quotation marks omitted].

In *Bangor Baptist Church v. State of Maine, Department of Educational and Cultural Services*, 549 F.Supp. 1208 (D.Me.1982), the court stated: "A statute is unconstitutionally vague *on its face* if it is expressed in such general terms that 'no standard of conduct is specified at all.' [Citations omitted.]" [Emphasis in original.] 549 F.Supp. at 1226. In that case the court was asked to construe the phrase "equivalent instruction" as set forth in Maine's compulsory education statutes. The court concluded that the term " 'equivalent instruction' is capable of objective measurement ... and has a 'core meaning that can reasonably be understood.' [Citations omitted.]" 549 F.Supp. at 1227. Relying on *Bangor Baptist Church* was of no avail to the defendants in *Ellis v. O'Hara, supra*, however, because the *Ellis* court distinguished the Missouri statutes from the Maine statutes on the ground that Maine provides more elaborate guidelines and regulations than does Missouri.

This Court, as did the magistrate below, concludes that *Ellis,* relied upon by Bayes, is inapposite here because the reader of § 33–202 is told that a child of school age is to be instructed in "subjects commonly and usually taught in the public schools" in a manner comparable to that of instruction in the public schools and in conformance with those schools' attendance policies and regulations. Anyone sincerely desiring to comply with the law has ready access through the Department of Education to the list of subjects required to be taught, and to the local school district's policies and regulations. Bearing in mind the rules enunciated in *Groseclose,* it is the opinion of this Court that § 33–202 is not unconstitutional.

The magistrate's order, adjudicating Walter Bayes in contempt of court and imposing sanctions therefore, and the district court's appellate decision upholding the magistrate's order, are affirmed. Costs to respondent, State of Idaho. No attorney fees allowed.